**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Shanton HUNTER, Defendant–Appellant.**

No. 92–5599.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 29, 1993.

Decided May 13, 1993.

Steven H. Cook, Asst. U.S. Atty. (briefed), Office of the U.S. Atty., Knoxville, TN, Harwell G. Davis, III, Asst. U.S. Atty. (argued), Jerry G. Cunningham, U.S. Atty., Office of

the U.S. Atty., Chattanooga, TN, for plaintiff-appellee.

John C. Cavett, Jr. (argued and briefed), Jahn, Jahn, Cavett & Maddux, Chattanooga, TN, for defendant-appellant.

Before: RYAN and SILER, Circuit Judges, and LIVELY, Senior Circuit Judge.

SILER, Circuit Judge.

Defendant Shanton Hunter appeals the district court's sentence of a 168–month term of imprisonment and a three-year term of supervised release. The issue is whether the district court abused its discretion when it imposed the minimum sentence under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") and ordered that the sentence be served consecutively to the unexpired portion of an unrelated state conviction pursuant to 18 U.S.C. § 3584 and U.S.S.G. § 5G1.3(c). For reasons stated, we affirm.

## I.

Hunter pled guilty on January 7, 1992, to one count of distribution of cocaine base, in violation of 21 U.S.C. § 841(a)(1). Previously, in July 1991, Hunter was sentenced by a state court to ten years for robbery and three years for a drug offense, consecutive, for a total sentence of thirteen years. However, as sentences in the Tennessee state system are parolable and the prisons are overcrowded, Hunter was eligible to be released after serving only 36 months. At the time of sentencing in this case, Hunter was serving the sentence in a Tennessee state penitentiary.

The Presentence Report stated that Hunter's criminal history triggered the career offender provisions of U.S.S.G. § 4B1.1. As a career offender, Hunter's base offense level was 32 and his criminal history category was VI. He was given a two-level downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1. The Guidelines sentencing range was between 168 and 210 months. At the April 27, 1992, sentencing hearing, Judge Edgar sentenced Hunter to the 168–month minimum term provided under the Guidelines. However, he ordered

that the sentence be served consecutively to the unexpired portion of the 36–month term of imprisonment Hunter was serving in the Tennessee penitentiary.

## II.

The government argues that Hunter has waived this issue on appeal, as defense counsel failed to object at the sentencing hearing. "[F]ailure to raise an objection at trial prevents its consideration on appeal ... 'It is this Court's inveterate rule not to reverse on grounds not raised in the district court.'" *United States v. Cardinal*, 782 F.2d 34, 36–37 (6th Cir.) (quoting *United States v. McDowell Contractors, Inc.*, 668 F.2d 256, 257 (6th Cir.1982)), *cert. denied*, 476 U.S. 1161, 106 S.Ct. 2282, 90 L.Ed.2d 724 (1986).

At the sentencing hearing, the following was stated:

THE COURT: Any questions about the sentence?

DEFENSE COUNSEL: Your Honor, I don't have a question. I wonder if I could have just a few minutes before he gets gone. Do you have another sentencing hearing?

THE COURT: No.

DEFENSE COUNSEL: I'm confused about the consecutive as opposed to concurrent nature of the sentence, and I had not researched that a great deal, because in the presentence report, I understood that the sentence today would be concurrent entirely with the other sentence, and I need to look through that for myself if I could.

THE COURT: Okay. You need to look at Section 5G1.3(c).

Then, the court explained its reasoning for the sentence, stating:

THE COURT: Giving him a credit for both of them [state offenses], actually. I'm giving him the benefit of the doubt on both the aggravated robbery and the crack case, which is, the latter of which was related conduct. So, the best we can come up with from the State is he's going to serve three years before he's eligible for parole on both cases. So, I've given him

credit for both cases, really, but actually I'm giving him more than that.

I mean, I've given him the bottom of the guidelines. So, it's really sort of academic, because it's—I've given him more than he might otherwise get, anyway, plus some. If you took—if you took 36 months off the top, you'd be at 174 months. I gave him 168 months.

DEFENSE COUNSEL: I understand.

THE COURT: Any question about that?

DEFENSE COUNSEL: (Nodding head negatively.)

The government argues that Hunter's counsel did not object at the sentencing hearing and, thus, the district court did not have the opportunity to correct the sentence, if necessary. However, we find that defense counsel implicitly raised the argument and preserved the objection.

### III.

Both parties agreed that the following section be applied for sentencing purposes:

The sentence for the instant offense shall be imposed to run consecutively to the prior unexpired term of imprisonment to the extent necessary to achieve a reasonable incremental punishment for the instant offense.

U.S.S.G. § 5G1.3(c).

The district court considered the following commentary in determining Hunter's sentence:

Where the defendant is serving an unexpired term of imprisonment in circumstances other than those set forth in subsections (a) or (b), the court shall impose a consecutive sentence to the extent necessary to fashion a sentence resulting in incremental punishment for the multiple offenses. To the extent practicable, the court shall impose a sentence for the instant offense that results in a combined sentence that approximates the total punishment that would have been imposed under § 5G1.2 (Sentencing on Multiple Counts of Conviction) had all of the offenses been federal offenses for which sen-

tences were being imposed at the same time.

U.S.S.G. § 5G1.3, Application Note 4.

The district court has discretion in imposing the sentence, as 18 U.S.C. § 3584(a) provides:

If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively, except that the terms may not run consecutively for an attempt and for another offense that was the sole objective of the attempt.

*See also United States v. Stewart,* 917 F.2d 970, 972 (6th Cir.1990).

■ Hunter's primary argument is that the district judge should have conducted an analysis or examination to determine whether Hunter's sentence should have run consecutively to his prior, unexpired state sentence to achieve a reasonable incremental punishment for the offense pursuant to U.S.S.G. § 5G1.2. Though Hunter states that the district court's analysis was inconsistent with the Presentence Report as it stated the sentences should be concurrent, the probation officer clarified, at the sentencing hearing, that the sentence should be consecutive to the state court sentence.

Nevertheless, Hunter argues that the following method should have been used in determining his sentence. First, the offense level for the instant drug offense should be 18 and the offense level for robbery should be 20. U.S.S.G. § 2B3.1. It is increased by 6 levels if a firearm is used. Thus, the offense level would be 26. Assuming that the robbery offense and the drug offense are not "closely related counts," each would constitute a "group." U.S.S.G. § 3D1.4. If Hunter had been sentenced for the robbery and the drug offense at the same time, the offense level would be 27. As Hunter is a career offender, his base offense level is increased to 32. U.S.S.G. § 4B1.1. He received a two-point credit for acceptance of responsibility, resulting in a total combined offense level of 30. Though the district judge found that Hunter's base offense level

was 30, Hunter argues that his sentence should not run consecutively to the state offense, as it was unnecessary to achieve an incremental punishment. Instead, Hunter argues the sentence should have been imposed concurrently so he would not have to serve a greater sentence in the present case than if the prior robbery offense had been a federal offense. Hunter contends that as he was a career offender, his base offense level would have been unaffected by including the aggravated robbery conduct. Thus, the district court should have given him the minimum for the current offense and ordered that the term of imprisonment be served concurrently to the state sentence. We disagree.

The goal of U.S.S.G. § 5G1.3 is to provide incremental punishment and to approximate the total punishment that would have been imposed under U.S.S.G. § 5G1.2. The district court could have imposed the 210–month maximum term of imprisonment and ordered that the sentence be served concurrently to the state sentence. Instead, the district court imposed a more favorable sentence to Hunter, as it reduced Hunter's potential 210–month term of imprisonment to 168 months by accounting for the 36–month state term of imprisonment. If the district court had imposed a 210–month term of imprisonment to be served concurrently with the state term of imprisonment, Hunter would have served six months longer than the sentence imposed. *See* U.S.S.G. § 5G1.2(c).

This court has held on numerous occasions that the district court has discretion in determining whether to sentence a defendant to terms consecutive or concurrent to a prior, unrelated offense pursuant to U.S.S.G. § 5G1.3. *See, e.g., United States v. Stewart,* 917 F.2d 970, 974 (6th Cir.1990); *United States v. Gibson,* 896 F.2d 206 (6th Cir.1990). The district court chose to sentence Hunter to the minimum allowable under the Guidelines to be served consecutively with the state imprisonment. Nevertheless, the district court did not sentence Hunter above the maximum allowed under the Guidelines, and the sentence allowed for incremental punishment. Thus, the court did not abuse its discretion in sentencing Hunter to a 168–

month term of imprisonment to run consecutively to his state sentence.

**AFFIRMED.**

RYAN, Circuit Judge, concurring.

While I agree that the sentence imposed by the district court should be affirmed, I reach this conclusion for reasons other than those stated in the majority opinion.

The majority appears to tacitly accept Hunter's suggested application of section 5G1.3 as a correct analysis of one possible route under the guidelines, despite concluding that it is not a route that the district court must necessarily follow. I, however, believe that the analysis he suggests, although exhibiting a partially correct understanding of the guidelines provisions, is erroneous. Moreover, the majority opinion essentially reasons that the guidelines invest the district court with discretion to impose a consecutive or concurrent sentence, and that because the sentence imposed fell within the applicable guideline range of 168–210 months, therefore, the district court did not abuse its discretion. This analysis, I believe, offers insufficient explication of the requirements of the guidelines.

Application Note 4 to U.S.S.G. section 5G1.3(c), in purporting to explain the discretion apparently conveyed to the district court by the text of the guideline, effectively and substantially limits this discretion by directing that the court fashion a sentence that attempts to "approximate[ ] the total punishment that would have been imposed under section 5G1.2 (Sentencing on Multiple Counts of Conviction) had all of the offenses been federal offenses for which sentences were being imposed at the same time." U.S.S.G. § 5G1.3, comment. (n. 4). By this language, the sentencing court is directed to undertake an odyssey through a labyrinth of guidelines provisions. After beginning at section 5G1.2, the court proceeds to Part D of Chapter 3 to determine the grouping of the multiple counts. It goes from there to the specific section of the guidelines that sets out the applicable range for the federal analog to the state crime. To determine the applicable range, a court should inquire whether any of the enhancements or reductions to sentences prescribed in Chapter 2—obstruction of jus-

tice, for example, or acceptance of responsibility—appropriately apply, in this case, to the prior state crime. From Chapter 2, the court progresses to a calculation of the combined offense level under section 3D1.4. The final step for the court is to return to section 5G1.3, where it is directed to subtract the state sentence from the maximum total sentence dictated by the combined offense level, and thereby to ascertain the maximum sentence to be imposed for the federal crime. At least one other circuit has described the details of this arduous process with commendable fortitude. *See, e.g., United States v. Gullickson,* 981 F.2d 344 (8th Cir.1992).

The majority opinion states that the district court "considered" Application Note 4 to section 5G1.3, thereby implying that the district court undertook the complicated analysis I have described. It is clear, however, that the district court entirely failed to do so, apparently unaware that the guidelines directs it to make such an analysis.

To be sure, the district court would have found it difficult to adequately implement this analysis under the circumstances of this case. Because the prior conviction was in state court, the district court simply did not have the facts before it that would allow full application of the guidelines. For example, under section 2B3.1, the base offense level for robbery is 20. The record reveals that Hunter "used a dangerous weapon" in committing the crime, but it does not disclose whether the weapon was a firearm, or whether Hunter actually used the weapon to harm someone. Those facts would determine whether the offense level should be increased between 3 and 6 levels. The record also does not reveal whether Hunter's behavior would have entitled him to any reductions in offense level, such as for acceptance of responsibility, or whether instead, the offense level should be enhanced for his role in the offense or for obstruction of justice, and so on. In short, it is completely unclear what the offense level for Hunter's state crime should be.

Still another problem in this case is to determine the actual length of the state sentence, in order to be able to determine how long a sentence the federal court may permissibly impose. Hunter was sentenced to ten years in state prison for his aggravated robbery charge, but according to the district court, he is eligible for parole in three years. He may not, of course, actually be paroled in three years, and thus there is considerable uncertainty about what figure should be subtracted from the total punishment to determine the maximum range of the federal sentence.

The guidelines offer relief to a district court faced with the problems engendered by a prior state conviction, however. Application Note 4 to section 5G1.3 provides that the analytical odyssey otherwise required should only be undertaken "[t]o the extent practicable," and explicitly cautions that "[i]t is not intended that the above methodology be applied in a manner that unduly complicates or prolongs the sentencing process." U.S.S.G. § 5G1.3 comment. (n. 4).

In Hunter's case, it is readily apparent that this methodology is simply impracticable, and therein lies the court's discretion. The guidelines do *not* give a district court the discretion to simply ignore this analysis, however. The majority opinion's failure to directly address the competing constraints at work in this section of the guidelines—the complicated grouping analysis versus the apparent discretion—may mislead future courts into concluding that they have discretion to undertake this analysis, or not, at their whim.

Therefore, despite the district court's failure to undertake this analysis, I nonetheless conclude that the sentence should be affirmed. To apply the required methodology here, given the paucity of information on the defendant's prior state conviction, is entirely impracticable, as well as unduly complicating and prolonging of the sentencing process. It is *only* for this reason that the district court had the discretion to abandon the process dictated by Application Note 4, and instead, to fashion a reasonable "incremental punishment" under section 5G1.3—not because the court has unfettered discretion under any circumstances to do so.

It is for these reasons that I conclude the sentence should be affirmed, and I therefore concur.