60 F.3d 829
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES, Plaintiff-Appellee,
v.
Gary MATSEN, Defendant-Appellant.
 No. 94-1133.
 United States Court of Appeals, Sixth Circuit.
 July 6, 1995.
 
 Before: WELLFORD, BOGGS, and SILER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant, Gary Matsen ("Matsen"), appeals the sentence imposed pursuant to his plea of guilty to a charge of bank fraud, a violation of 18 U.S.C. Sec. 1341. The issues raised are the district court's failure to depart downward, the ordering of $100,000 in restitution, and the court's failure to grant a concurrent sentence to a state sentence Matsen was then serving. For the reasons stated herein, we affirm.
 
 I.
 
 2
 In July 1993, Matsen was indicted for one count of bank fraud and one count of mail fraud. Matsen had forged signatures on loan documents to obtain funds from Old Kent Bank, a federally insured financial institution, for the construction of a home. The funds were obtained in a series of transactions that increased Matsen's home equity credit limit; the home equity loan eventually was converted into a long-term mortgage on Matsen's homestead. He subsequently defaulted on the loan. Matsen pleaded guilty to the bank fraud charge and was sentenced to twenty-one months of incarceration, to be served consecutively to his undischarged three-month term of imprisonment for an unrelated state drunk driving offense, and three years of supervised release. The district court ordered restitution of $100,000 but did not impose a fine.
 
 II.
 
 3
 First, Matsen contends that the district court abused its discretion by refusing to depart downward from the applicable sentencing range. His sentencing range was based on a criminal history score of IV, attributable to his nine criminal history points. Matsen claims that six of the nine points were given for alcohol-related convictions. He feels that, since he is a recovering alcoholic who was remained sober since his last state conviction, his criminal history score overstates the seriousness of his criminal history. Matsen argues that this overstatement, underscored by the bank fraud charge having no relation to the alcohol-related offenses, warrants a downward departure from the applicable sentencing range.
 
 
 4
 Whether this court agrees that a departure was warranted is irrelevant. If the sentencing court properly computed the guideline range and was aware of its discretion to depart downward, and the sentence was otherwise valid, the court's discretionary refusal to depart downward from the guidelines is not reviewable. See United States v. Meyers, 952 F.2d 914, 920 (6th Cir.), cert. denied, 112 S.Ct. 1695 (1992). There is no indication that the range was improperly calculated, or that the sentence is otherwise unlawful. The district court was aware of its discretion to depart downward. Its refusal to grant a departure, therefore, is not subject to review.
 
 III.
 
 5
 Second, Matsen claims that the district court improperly imposed an order of restitution under USSG Sec. 5E1.1. Matsen challenges the amount of restitution, which is reviewed for abuse of discretion, rather than the district court's authority to order restitution, which would be subject to de novo review. See United States v. Lively, 20 F.3d 193, 200 (6th Cir. 1994). The district court's discretion in ordering restitution is broad. Id. Matsen contends that the district court abused its discretion by: (1) failing to consider his resources and future earning capacity in ordering restitution; and (2) not crediting him for $79,017 already paid from his divorce property settlement. The first argument clearly is without merit. The district court, in determining the amount of restitution and whether to impose a fine, considered the presentence report, which set forth Matsen's educational and vocational skills, employment record, and information regarding his ability to pay. The facts in the report support the district court's determination of Matsen's ability to generate future earnings.
 
 
 6
 Matsen's second challenge to the restitution order is that Old Kent Bank will receive a windfall if the order is upheld because the bank received proceeds from Matsen's wife upon the sale of the home that was constructed with the loan money. That Matsen may now be entitled to credit for monies paid on his behalf, however, does not affect the original amount of the restitution award. The American Title Company, to whom the restitution is owed, suffered a loss of $100,000 as a result of Matsen's fraudulent activity. The restitution order of $100,000 was not in error. If monies were paid on Matsen's behalf--whether by his wife or a third party--Matsen is entitled to a credit of that amount against the restitution amount outstanding. There is no indication on the record, however, that the district court has or will refuse to grant such a credit.
 
 IV.
 
 7
 Third, Matsen claims that the district court erred in ordering his federal sentence to be served consecutively, rather than concurrently, to the three-month undischarged state sentence he was serving at the time of sentencing. The district court has discretion to impose a sentence concurrently or consecutively to a defendant's undischarged term of imprisonment. 18 U.S.C. Sec.3584(a) (1988); see United States v. Stewart, 917 F.2d 970, 972 (6th Cir. 1990). Matsen's first challenge to his sentence, however, is not an argument for concurrent sentencing as opposed to consecutive; rather, Matsen argues that he should have been given federal sentence credit for the time served prior to sentencing.
 
 
 8
 In regard to his entitlement to federal sentence credit, Matsen contends that the penalty he received in the state system was enhanced due to the federal charges. While serving time on federal detainer, Matsen was rendered ineligible for an alcohol addiction treatment program he would have entered had he not had a federal charge pending. After federal sentencing, he was again ineligible because his remaining state sentence was shorter than the minimum treatment program.
 
 
 9
 Matsen cites two Fifth Circuit cases for the proposition that where the pendency of a federal claim prevents release from imprisonment, the resulting detention should be credited to the federal sentence. See United States v. Garcia-Gutierrez, 835 F.2d 585 (5th Cir. 1988); United States v. Brown, 753 F.2d 455 (5th Cir. 1985). In each of those cases, however, the court held that the prisoner was not entitled to federal sentence credit, because he had failed to show that release from state custody was prevented solely by federal involvement. See Garcia-Gutierrez, 835 F.2d at 586-87; Brown, 753 F.2d at 456.
 
 
 10
 Matsen compares his situation, however, to that of a defendant who is charged with a state offense for which bond is set, but is detained because of a subsequent federal charge on which bond is denied. He argues that, as he would have been released to an inpatient alcohol treatment program had he not been indicted on the federal offense, he was, in effect, serving a federal sentence prior to sentencing on the federal charge.
 
 
 11
 This argument is without merit. Matsen's situation is not the same as that of a defendant who would otherwise have been released but for the pending federal charge. Nor is it the same as a defendant arrested on a state offense who, because of a federal charge, is retained in custody after the state offense is dropped. See United States v. Richardson, 901 F.2d 867 (10th Cir. 1990). Matsen's pending federal charge did not affect the duration of his state confinement. Moreover, he has presented no evidence that he will be denied rehabilitation or treatment during his federal confinement. At most, he has shown that his rehabilitation has been postponed.
 
 
 12
 Although we feel Matsen is not entitled to federal sentence credit, we need not make that determination at this time. First, the question of presentence credit is not ripe for adjudication by this court, as it is unclear whether this issue was presented to the district court. Defendant's sentencing memorandum only hints at the argument by asserting that Matsen should be given seven months' credit in computing his total sentence. Second, even assuming, arguendo, that the argument was fully presented to the district court, Matsen was asking the district court to make a determination it is not authorized to make. See United States v. Westmoreland, 974 F.2d 736, 737 (6th Cir. 1992), cert. denied, 113 S.Ct. 1818 (1993).
 
 
 13
 The applicable statute, 18 U.S.C. Sec. 3585(b), does not authorize a district court to award credit at sentencing. Rather, the Attorney General must determine the credit through the Bureau of Prisons. Only after Matsen exhausts his administrative remedies can he seek judicial review, through habeas, of the Attorney General's determination. Id.; see also United States v. Wilson, 112 S.Ct. 1351, 1354 (1992).
 
 
 14
 Matsen's second challenge to his sentence is that the district court improperly applied USSG Sec.5G1.3(c) in imposing his consecutive sentence. Section 5G1.3(c) states that "...the sentence for the instant offense shall be imposed to run consecutively to the prior undischarged term of imprisonment to the extent necessary to achieve a reasonable incremental punishment for the instant offense." The commentary to Sec.5G1.3(c) directs the district court to determine the total punishment for all the offenses as if the guideline for sentencing on multiple counts of conviction, Sec.5G1.2, applied. After determining this total, "[t]o the extent practicable, the court should consider a reasonable incremental penalty to be a sentence for the instant offense that results in a combined sentence of imprisonment that approximates the total punishment that would have been imposed under Sec.5G1.2 (Sentencing on Multiple Counts of Conviction) had all of the offenses been federal offenses for which sentences were being imposed at the same time." USSG Sec.5G1.3(c), comment. (n.3).
 
 
 15
 Where a policy statement contained in the Sentencing Guidelines prohibits certain actions by the district court, the statement is an authoritative guide to the meaning of the applicable guideline. Williams v. United States, 112 S.Ct. 1112, 1119 (1992). Similarly, where the commentary to a guideline interprets that guideline or explains its application, the commentary is binding on federal courts unless it is clearly erroneous or inconsistent with the guideline it interprets. Stinson v. United States, 113 S.Ct. 1913, 1917-20 (1993).
 
 
 16
 In light of the history of USSG Sec.5G1.3, it is clear that the current language does not require a district court to follow the "incremental punishment analysis." The original Sec.5G1.3 required courts to impose a consecutive sentence upon defendants serving an unexpired term of imprisonment for an unrelated offense at the time of sentencing. USSG Sec.5G2.3 (1987). In 1989, that section was replaced. The commentary to the 1989 version stated that:
 
 
 17
 Where the defendant is serving an unexpired term of imprisonment, but did not commit the instant offense while serving that term of imprisonment, the sentence for the instant offense may be imposed to run consecutively or concurrently with the unexpired term of imprisonment. The court may consider imposing a sentence for the instant offense that results in a combined sentence that approximated the total punishment that would have been imposed under Sec. 5G1.2 ... had all of the offenses been federal offenses for which sentences were being imposed at the same time.
 
 
 18
 USSG Sec.5G1.3 (1989) (emphasis added). Thus, the court had complete discretion to decide whether to engage in the incremental punishment analysis.
 
 
 19
 In 1991, Sec.5G1.3 was again replaced. The 1991 version stated that, for unrelated offenses not committed while the defendant was serving a term of imprisonment or committed after sentencing but prior to commencement of such term of imprisonment, "[t]he sentence for the instant offense shall be imposed to run consecutively to the prior unexpired term of imprisonment to the extent necessary to achieve a reasonable incremental punishment for the instant offense." USSG Sec.5G1.3 (1991). The commentary to that section stated that:
 
 
 20
 To the extent practicable, the court shall impose a (consecutive) sentence for the instant offense that results in a combined sentence that approximates the total punishment that would have been imposed under Sec.5G1.2 (Sentencing on Multiple Counts of Conviction) had all of the offenses been federal offenses for which sentences were being imposed at the same time.
 
 
 21
 USSG Sec.5G1.3, comment. (n.4) (1991). So, by November 1991, the Sentencing Commission required courts to follow the incremental punishment analysis in calculating the appropriate consecutive sentence.
 
 
 22
 In November 1992, Sec.5G1.3 was designated a Policy Statement, and the language of the commentary was changed to instruct that the court "should consider a reasonable incremental penalty to be a sentence for the instant offense that results in a combined sentence of imprisonment that approximates the total punishment that would have been imposed under Sec.5G1.2 ... had all of the offenses been federal offenses for which sentences were being imposed at the same time." USSG Sec.5G1.3, comment. (n.3) (1992).
 
 
 23
 Clearly, the current language allows the sentencing court more discretion than did the "shall impose" language of the 1991 version. We are aware that some circuits have interpreted this "should consider" language to require the sentencing court to attempt to calculate the reasonable incremental punishment that would be imposed under the commentary methodology, and, if abandoning the commentary methodology, give reasons therefor. See, e.g., United States v. Redman, 35 F.3d 437, 441 (9th Cir. 1994), cert. denied, 115 S. Ct. 992 (1995); United States v. Johnson, 40 F.3d 1079, 1984 (10th Cir. 1994). In fact, we have remanded a sentence for redetermination where the judge failed to "expressly turn his attention to Sec.5G1.3(c) and Application Note 3 of the commentary." United States v. Coleman, 15 F.3d 610, 613 (6th Cir. 1994).
 
 
 24
 In Coleman, however, the remand was necessary not only because the district judge denied us, as a reviewing court, "the benefit of his thoughts ... concerning what would constitute a reasonable incremental penalty," id., but also because the circumstances of the case did not render application of the commentary methodology impracticable. Id., citing United States v. Hunter, 993 F.2d 127 (6th Cir. 1993) (example of circumstances warranting resort to a simpler method of achieving a sentence allowing for incremental punishment). See also Coleman, 15 F.3d at 613-14, n.1 (noting that remand in Hunter was not required because the methodology was impracticable, and the method used by lower court achieved a sentence which approximated the total punishment that would have been imposed under USSG Sec.5G1.2).
 
 
 25
 As stated in Hunter, we do not read "should consider" to require an explicit reference to the commentary methodology in every case. In this case, as in Hunter's case, it is readily apparent that the methodology is simply impracticable. Matsen admits that a specific determination of a reasonable incremental punishment is impossible, as there is no federal counterpart to his state offense of drunk driving. In such cases of impracticality, the Commentary acknowledges that the district court should be permitted to make a rough estimate of the total punishment that would have been imposed under the guidelines. See USSG Sec. 5G1.3, comment. (n.3).
 
 
 26
 The guidelines give a district court considerable discretion in determining whether incremental punishment analysis is practicable. Of course, such discretion is not unfettered; the complete failure to consider the commentary methodology may constitute an error of law warranting remand. Only in cases where the methodology is entirely impracticable should the district court be allowed to abandon without consideration the process dictated by application note three and, instead, fashion a reasonable incremental punishment.
 
 
 27
 This is such a case of impracticability which warrants allowing the sentencing court to estimate a reasonable incremental punishment. The court engaged in exactly such a rough estimate, noting that the total sentence should be twenty-four months. Instead of sentencing Matsen to twenty-four months to run concurrently with his unexpired three-month term of incarceration, the court sentenced him to twenty-one months to run consecutively to the three months left of his state sentence.[1] The district court did not abuse its discretion in imposing this sentence.
 
 
 28
 AFFIRMED.
 
 WELLFORD, Circuit Judge, dissenting:
 
 29
 I respectfully dissent from the majority on the issue of restitution and on the concurrent/consecutive sentencing question.
 
 I. RESTITUTION
 
 30
 Based on the record before the district court, Old-Kent Bank's total loss was $165,000.00. Yet, it received total compensation of $179,017.00 ($100,000.00 from American Title Insurance Company and $79,017.00 from defendant's ex-wife). The Bank, therefore, received a windfall or excess payment of $14,017.00. The order of payment to the Bank in this case creates a problem. On December 17, 1992, American Title paid the Bank $100,000.00, presumably the limit of its contractual obligation to indemnify the insured. At that time, Matsen's ex-wife had not yet sold the mortgaged property in which the Bank held a security interest. Two-months later, she sold the property and paid the Bank $79,017.00. Had the Bank received the proceeds from the sale of the mortgaged property first, American Title presumably would have only been obligated to indemnify the Bank in the amount of $85,893.00, which would have equalled the Bank's total loss as a consequence of Matsen's fraudulent conduct.
 
 
 31
 In my view, the district court erred in calculating Matsen's obligation to make restitution to American Title. 18 U.S.C. Sec. 3663(e)(1) provides that "[t]he court shall not impose restitution with respect to a loss for which the victim has received or is to receive compensation, except that the court may, in the interest of justice, order restitution to any person who has compensated the victim for such loss to the extent that such person paid the compensation." While this statute grants the sentencing court the discretion to subrogate American Title's interest in restitution, the latter's right of subrogation is limited by the interest of the subrogor. 18 U.S.C. Sec. 3663(e)(1) (granting sentencing court discretion to award restitution to a third party but only "to the extent that [the third party] paid the compensation"); see also Executive Jet Aviation, Inc. v. United States, 507 F.2d 508, 516 (6th Cir. 1974) ("[U]nder general principles of subrogation, the subrogee stands in the shoes of the subrogor."). After receipt of the remitted property proceeds, the Bank's outstanding loss was limited to $85,983.00. When American Title paid the full $100,000.00 to the Bank (before knowing the full extent of the Bank's loss), it did so at its own risk. If the Bank's outstanding interest in restitution was only $85,983.00, then Sec. 3663(e)(1) limited the district court's discretion to order restitution to that amount. See United States v. Badaracco, 954 F.2d 928, 942-43 (3d Cir. 1992) (vacating restitution order and remanding because "a restitution order ... must be limited to the amount of [the victim's] loss as a result of [defendant's] bank fraud").
 
 
 32
 The majority apparently agrees that Matsen is entitled to a credit for any payments made by his ex-wife to the Bank. Nonetheless, the majority affirms the restitution order because it concludes that the district court is free to grant Matsen a credit if the circumstances warrant. Since we all agree that a credit might be due, I believe we should vacate the restitution order and remand with the following instructions: 1) the district court must make a specific finding as to the amount of the Bank's total loss, including interest and penalties,[1] and 2) the district court's discretion to award restitution to American Title is limited to the difference between the Bank's total loss and the proceeds paid to the Bank by Matsen's ex-wife.
 
 II. SENTENCING
 
 33
 It is apparent to me that there is a conflict between United States v. Hunter, 993 F.2d 127 (6th Cir. 1993), and United States v. Coleman, 15 F.3d 610 (6th Cir. 1994). Though I prefer the greater discretion afforded the sentencing court by Hunter, I believe Coleman is controlling in this case.
 
 
 34
 The district court did not follow or even consider the "incremental punishment methodology" set out in Application Note 3 of Guideline Sec. 5G1.3(c). That provision gives the sentencing court the discretion to impose a concurrent or consecutive sentence, but only based on an analysis of the need for an "incremental punishment" for the federal offense. USSG Sec. 5G1.3(c). The Sentencing Commission realized that the methodology called for by this section of the Guidelines would be imprecise if the unexpired sentence was a state sentence for which there was no corresponding federal crime, id. Sec. 5G1.3(c), comment. (n.3), such as the drunk driving offense in the case at bar.
 
 
 35
 In Hunter, we refused to remand for resentencing even though the district court did not follow the analysis suggested in the aforementioned Application Note 3. Defendant Hunter was serving an unexpired state sentence at the time of his federal sentencing and his Guidelines range was 168 to 210 months. Hunter, 993 F.2d at 128, 130. The sentencing court sentenced Hunter to a 168-month federal prison sentence to run consecutive to his unexpired state sentence. Id. at 128. On appeal, defendant argued that the district court should have followed the incremental punishment analysis set out in Application Note 3 to determine whether a concurrent sentence was warranted. Id. at 129. Judge Siler, joined by Judge Lively, agreed that Application Note 3 governed the incremental punishment inquiry but refused to remand. Id. at 129-30. The majority reasoned that if the district court had sentenced defendant to the top of the Guidelines range (210 months) and imposed a concurrent sentence, the resulting sentence would have been longer than the court's consecutive sentence. Id. at 130. Moreover, by failing to employ the incremental analysis of Application Note 3, the sentencing court only increased defendant's possible sentence by six months. Id. Thus, Hunter found that the sentencing court did not abuse its discretion in imposing a consecutive sentence. Id.
 
 
 36
 Judge Ryan concurred in the result but argued that the district judge was obligated to consider Application Note 3, even if he did not ultimately follow its guidance. Id. at 130-31 (Ryan, J. concurring). He agreed with the majority's result only because in the context of a state sentence that had no corresponding federal offense, it was impracticable for the district judge to apply this analysis:
 
 
 37
 In Hunter's case, it is readily apparent that this methodology is simply impracticable, and therein lies the court's discretion. The [G]uidelines do not give a district court the discretion to simply ignore this analysis, however. The majority opinion's failure to directly address the competing constraints at work in this section [5G1.3(c)] ... may mislead future courts into concluding that they have discretion to undertake this analysis, or not, at their whim.
 
 
 38
 Id. at 131.
 
 
 39
 In Coleman, on facts similar to the case at bar, we followed Judge Ryan's separate opinion in Hunter and remanded for resentencing because the district court failed to cite or consider the incremental punishment methodology in Application Note 3. Coleman, 15 F.3d at 612-13. Coleman conceded that there might be cases where the methodology of Application Note 3 would be "impracticable" because no corresponding federal crime existed for the purpose of comparison. Id. at 613. We, nevertheless, remanded because
 
 
 40
 the [sentencing] judge did not expressly turn his attention to Sec. 5G1.3(c) and Application Note 3 of the commentary, and we do not have the benefit of his thoughts in that context concerning what would constitute a reasonable incremental penalty ... [Thus,] we are unable to determine whether the district court's failure to expressly address the [G]uideline and commentary resulted in an incorrect application of the Sentencing Guidelines.
 
 
 41
 Id. Thus, Coleman requires the sentencing court to consider the incremental analysis of Application Note 3, even if the circumstances of a given case do not warrant its actual application. I believe that Coleman adopts a prophylactic rule to ensure that the discretion conferred on the sentencing court is circumscribed. See Hunter, 993 F.2d at 131 (Ryan, J., concurring); United States v. Stewart, 917 F.2d 970, 973 (6th Cir. 1990).
 
 
 42
 Although the district court in this case neither considered nor applied Application Note 3, the judge was aware of his discretion to impose a consecutive or concurrent sentence. He specifically stated that he considered a twenty-four month sentence appropriate. He imposed a twenty-one month consecutive sentence in addition to Matsen's three month unexpired state sentence, rather than a twenty-four month concurrent sentence, because "it [wa]s the easier way." Moreover, the twenty-four month sentence remained within the applicable Guidelines range of twenty-one to twenty-seven months. While the district court's failure to consider Application Note 3 might not have been error under Hunter, the court's omission does not satisfy Coleman.
 
 
 43
 The majority reads Coleman differently and concludes that "in cases where the methodology is entirely impracticable ... the district court [is] allowed to abandon without consideration the process dictated by application note three." I must disagree with the majority's interpretation of Coleman. Under Coleman, "impracticability" can relieve the sentencing court of the obligation to follow the analysis but not the obligation to consider it. Coleman, 15 F.3d at 613. In fact, Coleman expressly noted that questions about the impracticability of the incremental analysis did not relieve the sentencing court from the obligation to address itself to the analysis and to state its reasons for disregarding the analysis. Id.
 
 
 44
 Most of the other circuits have adopted a similar reading of Sec. 5G1.3(c). See, e.g., United States v. Holifield, F.3d, No. 94-3425, 1995 WL 229577, at * 5 (3d Cir. Apr. 19, 1995) ("We ... join the majority of circuits that have addressed this question in concluding that ... the [sentencing] court may employ a different method in determining the sentence as long as it indicates its reasons for not employing the commentary methodology."); United States v. Brassell, 49 F.3d 274, 278-79 (7th Cir. 1995) (stressing that sentencing court "is expected to address the methodology set forth in USSG Sec. 5G1.3, comment. (n.3)," even though it "retain[s] the discretion to determine that this methodology does not yield an appropriate incremental punishment"); United States v. Bell, 46 F.3d 442, 446 n.8 (5th Cir. 1995) ("We note that even if subsection (c) were the applicable [G]uideline in this case, we would be required to vacate and remand for resentencing because the district court failed ... toexplain why such a methodology would be impracticable in this case."); United States v. Johnson, 40 F.3d 1079, 1084 (10th Cir. 1994) (noting that sentencing court may choose to disregard the methodology in Application Note 3, "[h]owever, if a district court departs from the analysis required by Sec. 5G1.3(c), it must explain its rationale for doing so"); United States v. Redman, 35 F.3d 437, 441 (9th Cir. 1994) (holding that sentencing court may disregard the methodology if it is impracticable but must "state its reasons for abandoning the commentary methodology in such a way as to allow us to see that it has considered the methodology"), cert. denied, 115 S. Ct. 992 (1995); United States v. Gullickson, 981 F.2d 344, 349 (8th Cir. 1992) ("We adopt the majority view and hold that sentencing courts do not have discretion ... to ignore [Sec.] 5G1.3(c)."). Several circuits have expressly relied on our decision in Coleman. See, e.g., Holifield, No. 94-3425, 1995 WL 229577, at * 5 n.7; Johnson, 40 F.3d at 1084; Redman, 35 F.3d at 441.
 
 
 45
 I dissent because I believe Coleman dictates that we vacate Matsen's sentence and remand for resentencing with instructions that the district court make the following findings: 1) that the consecutive sentence represents a reasonable incremental punishment, 2) that the court employed or considered the methodology in Application Note 3 of Sec. 5G1.3(c), and 3) state its reasons, if the court does not employ the methodology in Application Note 3.
 
 
 
 [1]
 Matsen also contends that plea agreement bound the court to sentence at the bottom of the applicable sentencing range, or 18 months. Matsen is wrong. The plea agreement provided that the government would recommend the lowest figure in the range, but the court was not bound by it
 
 
 [1]
 While the PSI assumed that the Bank's total loss was the $165,000.00 face amount of the fraudulent loans, it also states that the Bank averred that its outstanding loss equaled $139,233.50, even after the payments by American Title and Matsen's ex-wife. If interest and penalties increased the Bank's loss to an amount greater than $179,017.00, then the district court would have the discretion under Sec. 3663(e)(1) to order full subrogation to American Title in the amount of $100,000.00, but, the record is unclear in this regard. The PSI states that the victim impact is only the $100,000.00 paid by American Title. The district court needs to make specific findings in this respect