94 F.3d 645
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Prince Albert RANKIN, III, and Odis Ayers, Jr., Defendants-Appellants.
 Nos. 95-3112, 95-3131.
 United States Court of Appeals, Sixth Circuit.
 Aug. 14, 1996.
 
 Before: MARTIN, KRUPANSKY, and DAUGHTREY, Circuit Judges.
 PER CURIAM.
 
 
 1
 On May 18, 1994, Prince Albert Rankin, III, Odis Ayers, Jr., and Charles D. Stargell were charged in a two-count indictment with conspiring to distribute cocaine in violation of 21 U.S.C. § 846 (Count I) and possession with intent to distribute approximately two kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count II).
 
 
 2
 Rankin pled guilty of his own accord on August 15, 1994 to both counts of the indictment, and was sentenced on January 13, 1995 to nineteen years and seven months' incarceration. Ayers pled guilty on August 15, 1994 to Count II of the indictment pursuant to a written plea agreement, and was sentenced on January 31, 1995 to five years' imprisonment. Both defendants filed a timely appeal.
 
 I.
 
 3
 On appeal, Rankin argues that the district court: (1) violated Fed.R.Crim.P. 11(e)(1) by participating in the plea negotiation process; (2) erred in failing to grant Rankin's motion to withdraw his guilty plea; and (3) violated his right to a speedy trial.
 
 
 4
 (1) Fed.R.Crim.P. 11(e)(1)
 
 
 5
 This case originally was assigned to Judge S. Arthur Spiegel, but was transferred to Judge Carl B. Rubin because of Judge Spiegel's trial calendar. Concerned that he would not receive a fair trial from Judge Rubin, Rankin filed motions seeking the judge's recusal, asking that the case be removed from the judge's docket, and requesting that the case be returned to Judge Spiegel. Those motions were denied, and Rankin's case was set for trial before Judge Rubin on August 15, 1994.
 
 
 6
 According to the United States, on the morning of August 15, Rankin informed Judge Rubin that he wanted to plead guilty to the indictment if he could do so before Judge Spiegel. Judge Rubin contacted Judge Spiegel, who agreed to accept Rankin's plea, and the case was transferred back to Judge Spiegel for disposition. Rankin now claims that he entered a guilty plea only because he feared the possibility of being sentenced by Judge Rubin. Rankin claims his fear stemmed from previous contact he had had with Judge Rubin, Judge Rubin's denial of his requests to return the instant case to Judge Spiegel, and the irregular manner in which the case had been reassigned to Judge Rubin.[1] Rankin claims that Judge Rubin was aware of his fears, and coerced him into entering a guilty plea by promising to transfer the case back to Judge Spiegel on the condition that Rankin plead guilty. Rankin argues that, by agreeing to transfer the case in this manner, Judge Rubin unlawfully involved himself in the plea negotiation process in violation of Fed.R.Crim.P. 11(e)(1), and caused Rankin to enter an involuntary guilty plea. Rule 11(e)(1) forbids a district judge from participating in plea agreement negotiations under any circumstances. United States v. Barrett, 982 F.2d 193, 195 (6th Cir.1992). Failure to comply with this provision constitutes plain error and entitles a defendant to withdraw a guilty plea. United States v. Bruce, 976 F.2d 552, 554 (9th Cir.1992). Actual prejudice need not be shown to warrant a remand, United States v. Corbitt, 996 F.2d 1132, 1135 (11th Cir.1993), and this type of error may be corrected on appeal even if a claim of error was not raised at the district court level. United States v. Sammons, 918 F.2d 592, 601 (6th Cir.1990).
 
 
 7
 After reviewing the record, we believe Rankin's characterization of Judge Rubin's offer to return the case to Judge Spiegel as pressure to plead guilty is without merit. The only statement in the record related to Rankin's allegation is Judge Rubin's in-chambers question on the morning of August 15: "Do I understand that my offer will be accepted?" to which defense counsel replied: "If it's still open, yes." Judge Rubin then stated: "I have already talked to Judge Spiegel. He will take the plea, and I'm perfectly content. It's of no problem to me." (J.A. at 150). In the same conversation, Judge Rubin stated: "[T]he worst thing, absolutely the worst thing a Court can ever do is to get into plea negotiations. Once you start, you're going to get into trouble that you can't begin to imagine." (J.A. at 152-53).
 
 
 8
 A careful review of the record discloses no sign of judicial participation in the plea negotiation process. There is no indication in the record that Judge Rubin had discussions with counsel concerning the facts of Rankin's case, any aspect of sentencing, or Rankin's possible guilt or innocence, and Rankin offers no factual support for his assertion that Judge Rubin initiated Rankin's request to plead guilty or coerced him to plead in that manner. On the facts before us, it appears that Judge Rubin simply permitted Rankin to enter a guilty plea before a different district judge, which did not render Rankin's plea invalid.
 
 
 9
 (2) Motion to Withdraw Guilty Plea
 
 
 10
 Three days after pleading guilty, Rankin moved, pursuant to Fed.R.Crim.P. 32(e), to withdraw his plea on the ground that, at the time of his plea, he lacked an understanding of how the federal sentencing guidelines would have an impact upon him.[2] The district court denied Rankin's motion on October 13, 1994, and Rankin now claims that the district court erred in doing so.
 
 
 11
 We review a district court's denial of a motion to withdraw a guilty plea for an abuse of discretion. United States v. Bashara, 27 F.3d 1174, 1180 (6th Cir.1994), cert. denied, 115 S.Ct. 909 (1995). Rule 32(e) provides that a court may permit the withdrawal of a guilty plea prior to sentencing upon a showing by the defendant of "any fair and just reason." A defendant bears the burden of proving that the withdrawal of his or her plea is justified. United States v. Baez, 1996 WL 350715 * 2 (6th Cir.1996).
 
 
 12
 We have identified several factors that a district court should consider in determining whether a defendant has shown a "fair and just reason" to withdraw a guilty plea. These factors include: (1) the amount of time between entry of the plea and the filing of the motion to withdraw the plea; (2) whether a valid reason exists for failure to move for withdrawal sooner; (3) whether the defendant has maintained his or her innocence; (4) the circumstances underlying entry of the guilty plea; (5) the defendant's nature and background; (6) the defendant's prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted. Bashara, 27 F.3d at 1181.
 
 
 13
 The district court weighed the above factors and concluded that, given the circumstances of this case, the last three criteria deserved the most weight. The court noted that: Rankin had had numerous convictions and had served sentences in both state and federal court; the evidence of guilt was substantial; and Rankin's motion to withdraw his plea appeared to be part of a deliberate effort to manipulate the system and to manipulate Judge Spiegel into trying the case. The court further indicated that it was satisfied that Rankin had entered his plea knowingly and voluntarily, and concluded that the reasons Rankin gave for wanting to withdraw his plea were "not sufficiently specific and [in] conflict with the statements taken during the proceedings to accept his plea." (J.A. at 97-98).
 
 
 14
 Rankin claims that the district court erred in making these findings because he filed his motion to withdraw a very short time after entering his plea; he maintained his lack of involvement in the overall conspiracy; but for the involvement of Judge Rubin in the plea negotiation process, he would not have entered a guilty plea; his last criminal case court appearance was many years ago and any understanding he may have had of the criminal judicial system was based on pre-guidelines law; and there could be little, if any, prejudice to the government because Rankin filed his motion to withdraw so quickly.
 
 
 15
 We agree with the district court that Rankin has not established a fair and just reason for allowing the withdrawal of his plea. The district court accepted Rankin's plea only after questioning him in accordance with Fed.R.Crim.P. 11(c) and (d), and ensuring that Rankin's guilty plea was entered knowingly and voluntarily.[3] There was a factual basis for Rankin's guilty plea and he indicated that he understood the nature of the charges against him. In denying Rankin's motion to withdraw his plea, the court considered and made findings as to the relevant factors, and explained its decision to accord more weight to certain of those factors. We find no abuse of discretion.
 
 
 16
 (3) Speedy Trial Act Claim
 
 
 17
 At the time of sentencing, Rankin moved to dismiss the case against him based on an alleged Speedy Trial Act violation. The district court denied the motion. On appeal, Rankin claims that the district court should have dismissed his case because the period of time between his arraignment and the date set for trial exceeded that permitted by the Speedy Trial Act, 18 U.S.C. §§ 3161, et seq. We review a district court's denial of a motion to dismiss for an alleged violation of the Speedy Trial Act for an abuse of discretion. United States v. Taylor, 487 U.S. 326, 331 (1988).
 
 
 18
 Rankin was arrested and taken into custody for the instant offense on May 5, 1994. Rankin appeared before Judge Spiegel on May 10 and was ordered detained pending trial. An indictment was returned against Rankin on May 18, and he was arraigned on May 24. Rankin entered his guilty plea on August 15.
 
 
 19
 The Speedy Trial Act "commands that a defendant be tried within 70 days of the latest of either the filing of an indictment or information, or the first appearance before a judge or magistrate." Henderson v. United States, 476 U.S. 321, 322 (1986). Delays "resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion" are excluded from the calculation of this time period pursuant to 18 U.S.C. § 3161(h)(1)(F). Id.
 
 
 20
 In this case, Rankin filed five motions on May 31, 1994. The United States responded to those motions on June 22 and the district court ruled on those motions on July 29. Pursuant to Section 3161(h)(1)(F), the time period from June 1 through July 29 is to be excluded from the seventy-day calculation. Rankin filed further motions on August 3 and August 9, which resulted in seven additional excludable days.
 
 
 21
 When the excludable periods of delay are properly counted, at least sixty-six days between Rankin's indictment and the date set for his trial (i.e. the date on which he pled guilty) were excludable from the Speedy Trial Act's seventy-day calculation. There was no violation of Rankin's rights under the Speedy Trial Act.
 
 
 22
 AFFIRMED.
 
 II.
 
 23
 Ayers' arguments on appeal stem from the district court's refusal during sentencing to grant him a role reduction pursuant to U.S.S.G. § 3B1.2 and the court's decision to impose a sentence consecutive, rather than concurrent, to his undischarged term of imprisonment from another conviction.
 
 
 24
 (1) Role Reduction in Sentencing
 
 
 25
 Ayers first claims that the district court erroneously denied him a reduction in his sentence pursuant to U.S.S.G. § 3B1.2 (Mitigating Role in the Offense).
 
 
 26
 The district court denied Ayers a reduction for his role in the instant offense on the ground that a preponderance of the evidence supported the Probation Officer's recommendation that Ayers did not deserve such a reduction. Whether a defendant is a minor or minimal participant in criminal activity is a factual determination reviewed for clear error. United States v. Sanchez-Lopez, 879 F.2d 541, 557 (9th Cir.1989) (stating also that this factual determination "turns upon culpability which requires consideration of a variety of factors"). The defendant bears the burden of proving mitigating factors by a preponderance of the evidence. United States v. Perry, 908 F.2d 56, 58 (6th Cir.), cert. denied, 498 U.S. 1002 (1990).
 
 
 27
 Section 3B1.2 of the Sentencing Guidelines allows for a reduction in a defendant's sentence as follows:
 
 
 28
 (a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.
 
 
 29
 (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.
 
 
 30
 In cases falling between (a) and (b), decrease by 3 levels.
 
 
 31
 The four-point reduction for a minimal role applies to "defendants who are plainly among the least culpable of those involved in the conduct of a group." U.S.S.G. § 3B1.2, comment n. 1. A defendant's "lack of knowledge or understanding of the scope and structure of the enterprise and the activities of others is indicative of a role as minimal participant." Id. A minor participant is one who is "less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, comment n. 3.
 
 
 32
 Ayers argues that a reduction was appropriate because his arrest was the result of an extensive undercover operation targeted at Rankin, and that he played an "absolutely insignificant role ... during the commission of this offense." Brief for Ayers at 8. Ayers concedes, however, that he knew Rankin was in the process of conducting a drug deal; that he knew the bag probably contained cocaine; that he knew where the bag was concealed in Stargell's pickup truck; and that he retrieved the bag from the truck bed and handed it to Rankin. Given these concessions, we cannot say that the district judge's decision to deny a role reduction for sentencing purposes was clearly erroneous. The evidence supports the district court's determination that Ayers was not a minor or minimal participant, and we will not disturb that finding.
 
 
 33
 (2) Consecutive vs. Concurrent Sentences
 
 
 34
 Before pleading guilty in this case, Ayers pled guilty to another federal drug charge in Dayton, Ohio.[4] He was out on bond when he committed the offense at issue in these proceedings. After Ayers pled guilty to the offense in this case, he returned to Dayton for sentencing and began serving the sentence for his other offense.
 
 
 35
 Because Ayers was subject to an undischarged term of imprisonment at the time of his sentencing in this case, U.S.S.G. § 5G1.3 applied to him. Prior to his sentencing, Ayers asked the district court to impose a concurrent or partially concurrent, rather than consecutive, sentence pursuant to Section 5G1.3(c). The district court declined to grant that request, and imposed the mandatory minimum five-year sentence[5] for the instant offense to run consecutive to the sentence imposed by the Dayton court.
 
 
 36
 On appeal, Ayers argues that the district court did not understand that it had the option of imposing a concurrent, rather than consecutive, sentence and therefore erred in its legal interpretation of the sentencing guidelines. Our review of the record leads us to believe that the district judge understood that he was not obligated to run the sentence consecutively. During sentencing, the judge asked the Assistant United States Attorney whether he was obligated to run Ayers' sentence consecutively. The government's attorney replied: "No, Your Honor, I don't believe you're obligated to run these consecutive. However, the guidelines are pretty clear in stating that you should." (J.A. 246). Also while he was sentencing Ayers, the district judge indicated that he was aware of his duty to make specific findings with regard to the way in which he was seeking to "achieve a reasonable incremental punishment of the instant offense." (J.A. at 262). Because we believe the district judge understood that he was not required to run the sentences consecutively, we will review his decision to order a consecutive, rather than a concurrent, sentence for an abuse of discretion. See United States v. Hunter, 993 F.2d 127, 130 (6th Cir.1993) (stating that a "district court has discretion in determining whether to sentence a defendant to terms consecutive or concurrent to a prior, unrelated offense pursuant to U.S.S.G. § 5G1.3").
 
 Section 5G1.3(c) provides:
 
 37
 [T]he sentence for the instant offense shall be imposed to run consecutively to the prior undischarged term of imprisonment to the extent necessary to achieve a reasonable incremental punishment for the instant offense.
 
 
 38
 Application Note 3 interprets Section 5G1.3(c) and explains how it should be applied. Note 3 instructs the district court to determine the total punishment of the all of the offenses as if Section 5G1.2 (Sentencing on Multiple Counts of Conviction) applied. Note 3 states: "[t]o the extent practicable, the court should consider a reasonable incremental penalty to be a sentence for the instant offense that results in a combined sentence of imprisonment that approximates the total punishment that would have been imposed under § 5G1.2 ... had all of the offenses been federal offenses for which sentences were being imposed at the same time." In other words, "[t]he goal of U.S.S.G. § 5G1.3 is to provide incremental punishment and to approximate the total punishment that would have been imposed under U.S.S.G. § 5G1.2." Hunter, 993 F.2d at 129.
 
 
 39
 In this case, the district court followed the approach set forth in Section 5G1.3(c) and its accompanying notes before determining that consecutive sentences were necessary to achieve a reasonable incremental punishment. The district court noted that the "pseudo guideline range" calculated pursuant to Section 5G1.3(c) was 84 to 108 months. Because a concurrent sentence would have resulted in a sentence well below the bottom of the pseudo guideline range, the court decided that the mandatory minimum five year sentence should be served consecutive to the undischarged sentence to "achieve a reasonable incremental punishment of the instant offense." This sentence resulted in a total sentence of ten years. In reaching this decision, the district court noted that Ayers had committed two separate crimes with different people and that he was not unfamiliar with the drug scene. The court also noted that Ayers had committed this offense while on bond awaiting sentence on his other offense, and noted the effect that "good time" may have on Ayers' actual time spent in prison.
 
 
 40
 The district court did not abuse its discretion in sentencing Ayers to a five-year prison term to be served consecutively with his undischarged term of federal imprisonment.
 
 
 41
 AFFIRMED.
 
 
 
 [1]
 Rankin claims that the court failed to follow the random reroll process for assigning the case to a judge other than Judge Spiegel
 
 
 [2]
 Rankin claims that his discussions with counsel immediately after entering his plea reflected a lack of understanding of the consequences of his plea. In the motion to set aside Rankin's guilty plea, counsel for Rankin stated:
 Prior to the plea it appeared to counsel that Mr. Rankin understood where he would likely be placed in the guidelines. However, the questions he asked and observations he made to counsel following the plea show that either his retention of facts is bad, or his comprehension was not what it appeared to counsel to be during conferences with him. Upon further discussion, Mr. Rankin realized that he had mistakenly believed certain things were to occur as a result of his plea. Counsel alerted him that that was not the case. Mr. Rankin, therefore, did not intelligently enter into this plea.
 (J.A. at 71).
 
 
 [3]
 The court specifically asked Rankin whether he wished to withdraw his not guilty pleas; informed Rankin of the minimum and maximum penalties; ensured that Rankin understood the nature, meaning, and cause of the charges against him; asked whether Rankin was satisfied with the advice from his lawyer; inquired into whether Rankin and his lawyer had talked about how the sentencing guidelines might apply in his case; told Rankin that the court would not be able to determine the guideline sentence until after the presentence report was completed; indicated that a judge may in some circumstances impose a sentence more or less severe than that called for by the guidelines; indicated that parole has been abolished; and enumerated the constitutional rights Rankin would forfeit if he pled guilty. Rankin indicated that he understood all of this information
 
 
 [4]
 On December 28, 1994, Ayers was sentenced to five years' imprisonment after pleading guilty to a violation of 18 U.S.C. § 1952 in federal district court in Dayton, Ohio. The sentencing guideline imprisonment range for that offense was determined to be 87 to 108 months. The sentence of 60 months was the statutory maximum. The judge in that case noted that he would not order a consecutive or concurrent sentence with the instant case, but would leave that determination for Judge Spiegel
 
 
 [5]
 The imprisonment range for the offense in this case was determined to be 51 to 63 months. There was a mandatory minimum term of imprisonment of 60 month for the instant offense, however, making the guideline range 60 to 63 months