61 F.3d 904
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Harold E. WOODS, Defendant-Appellant.
 No. 94-1992.
 United States Court of Appeals, Sixth Circuit.
 July 19, 1995.
 
 Before: LIVELY, NELSON, and SILER, Circuit Judges.
 DAVID A. NELSON, Circuit Judge.
 
 
 1
 Two months after agents of the U.S. Treasury Department's Bureau of Alcohol, Tobacco and Firearms removed a number of guns and about two ounces of marijuana from the residence of the defendant, a convicted felon who could not lawfully possess firearms, ATF agents returned to the residence to execute a warrant for the defendant's arrest. The agents allegedly knocked on the front door and announced in loud voices that they were police officers with an arrest warrant. Receiving no answer, the agents broke down the door and found the defendant inside the house with a loaded rifle. They seized the rifle and arrested the defendant.
 
 
 2
 The defendant was subsequently indicted on firearms and drug charges. A jury acquitted him of possession of marijuana with intent to distribute it, but found him guilty on two counts of being a felon in possession of firearms (18 U.S.C. Sec. 922(g)) and one count of making a false statement to obtain a firearm (18 U.S.C. Sec. 922(a)(6)). He was sentenced to three concurrent 60-month terms of imprisonment, and this appeal followed.
 
 
 3
 Challenging his conviction for possession of the rifle seized at the time of his arrest, the defendant contends that the district court erred in denying a motion to suppress evidence obtained in what he claims was an unlawful entry of his house. He also challenges his sentence, contending that the court erred (1) in increasing his guideline offense level under U.S.S.G. Sec. 2K2.1(b)(5) for possession of a firearm "in connection with another felony offense;" (2) in increasing his offense level under U.S.S.G. Sec. 2K2.1(b)(4) by reason of the fact that one of the weapons in question, unbeknownst to him, had been stolen; and (3) in increasing his criminal history point score under U.S.S.G. Sec. 4A1.1(d) on the theory that he committed an offense while on probation.
 
 
 4
 Rejecting the defendant's contentions, we shall affirm the judgment in all respects.
 
 
 5
 * The legality of the seizure of the rifle turns on the resolution of a sharply disputed question of fact. The government presented evidence that before attempting to execute the arrest warrant the agents placed a telephone call to the defendant's house and made sure he was at home; that when they presented themselves at the house they knocked on both the door and a picture window and repeatedly shouted "police with arrest warrant;" and that they waited at least five to ten seconds (30 to 35 seconds, according to evidence presented at trial) without a response before breaking down the door. The defendant acknowledged the telephone call--in which the caller hung up without identifying herself--but he testified that the house was totally quiet before the door was broken down. He said that he heard nothing before the silence was exploded by the sound of the door being battered down. The district court credited the government's testimony, finding that the agents knocked on both the door and the window and waited for a period of time that was reasonable, under the circumstances, before forcing entry into the house.
 
 
 6
 When the federal constitution was adopted toward the end of the 18th century, it had long been established at common law that before an officer could break open the door of a dwelling in the course of his duties, he normally had to announce his presence and authority. The Supreme Court has recently held that this "knock and announce" principle forms part of the inquiry into the reasonableness--and thus, under the Fourth Amendment, the constitutionality--of a search and seizure conducted under circumstances of the sort in question here. Wilson v. Arkansas, 115 S.Ct. 1914 (1995). And Congress has codified the knock and announce principle in a statute that says that an officer may break open the door of a house to execute a search warrant if refused admittance "after notice of his authority and purpose...." 18 U.S.C. Sec. 3109. If the defendant's version of the facts were to be accepted here, the motion to suppress would clearly have to be granted. See Miller v. United States, 357 U.S. 301, 313-14 (1958).
 
 
 7
 But the district court, as we have said, accepted the government's version of the facts, not the defendant's. Contrary to a suggestion made in the defendant's brief, appellate courts do not review factual findings de novo; "[q]uestions of fact are reviewed under the deferential, clearly erroneous standard." United States v. McConney, 728 F.2d 1195, 1200 (9th Cir.) (en banc), cert. denied, 469 U.S. 824 (1984). The factual findings made by the district court here may or may not have been correct, but we cannot say that they were clearly erroneous. Neither can we say that it was unreasonable for the officers to break the defendant's door down when, after they had knocked on the door and window and shouted several times that they were police with a warrant, they waited at least five to ten seconds without receiving any response from the occupants of the house. Cases such as this must be "carefully scrutinized," see United States v. Nabors, 901 F.2d 1351, 1355 (6th Cir.), cert. denied, 498 U.S. 871 (1990), but we believe that this particular case survives such scrutiny.
 
 II
 
 8
 "If the defendant used or possessed any firearm or ammunition in connection with another felony offense," U.S.S.G. Sec. 2K2.1(b)(5) directs, the defendant's base offense level must be increased by four levels. A probation officer prepared a pre-sentence investigation report recommending a four-level enhancement here on the theory that at the time of his arrest the defendant had admitted that he sold marijuana from his home. Implicit in the probation officer's recommendation is the conclusion that the weapons and ammunition found in the house were used or possessed in connection with the defendant's supposed drug business.
 
 
 9
 The defendant objected to this portion of the pre-sentence report, arguing that the jury must have believed the defendant when he testified that he did not intend to distribute the marijuana; that there were no scales or other drug paraphernalia in the defendant's home; and that he did not possess large sums of money. Based on the evidence presented at trial, however, and stating that the testimony of the defendant was not credible, the district court found by a preponderance of the evidence that the defendant was in fact engaged in selling marijuana. We must accept this finding unless we consider it clearly erroneous. 18 U.S.C. Sec. 3742(e). The verdict of the jury, which was rendered under a "reasonable doubt" instruction, is not controlling under the "preponderance of the evidence" standard applicable in the sentencing context.
 
 
 10
 The trial testimony showed that in the initial search of the defendant's bedroom the ATF agents discovered two rifles, one of which was loaded, and a loaded Sturm Ruger .357 caliber magnum handgun. Marijuana was found at two different locations in the same bedroom, and an agent testified that the defendant stated "that he sold the marijuana for money." The marijuana was admitted in evidence, so the trial court had first hand knowledge of the quantity involved.
 
 
 11
 The defendant testified that he had found a marijuana plant growing in a vacant lot; that he pulled the plant up and dried it out; that he rolled perhaps seven, eight or nine joints; that he smoked half of one and found the marijuana "wasn't any good;" that he was not selling marijuana from his home; that the marijuana found in his bedroom "would be almost impossible to sell;" and that he intended to throw the marijuana away.
 
 
 12
 On cross-examination the defendant was confronted with the actual marijuana cigarettes seized from his bedroom, and he acknowledged that there were "a lot more than seven or eight...." The prosecutor suggested that there were at least 50 or 60 cigarettes, to which the defendant responded "I wouldn't say that." He did not deny that there were substantially more than the seven, eight or nine he originally said he had rolled, however, and we are constrained to accept, as not clearly erroneous, the trial court's finding that the cigarettes were intended for sale and that the defendant's possession of them was feloneous.
 
 
 13
 If the defendant was keeping marijuana cigarettes in his bedroom for sale, we have no problem with the conclusion that the weapons and ammunition found in the same room were used or possessed in connection with the drug offense. The necessary nexus between the weapons and the drugs can be found under the "fortress" theory adopted in United States v. Henry, 878 F.2d 937, 944 (6th Cir.1989). It may well be true that the defendant, who lived in a high crime area, would have been concerned about his personal safety even if he had not been trafficking in drugs and would have possessed the guns anyway, but the increased risk of violence addressed in Sec. 2K2.1(b)(5) obviously exists regardless of the existence of additional reasons for possessing the weapons. See United States v. Condren, 18 F.3d 1190, 1199 (5th Cir.), cert. denied, 115 S.Ct. 161 (1994).
 
 III
 
 14
 The defendant's offense level was increased by two levels under U.S.S.G. Sec. 2K2.1(b)(4) because one of the weapons found in his possession had been stolen. The defendant argues that this was error because he did not know the gun had been stolen; that Sec. 2K2.1(b)(4) should be read to imply a scienter requirement; and that the enhancement violated his rights under the Due Process Clause. These arguments are not persuasive.
 
 
 15
 The government furnished a state police report showing that the weapon had been reported as stolen. The Sentencing Commission's Commentary on Sec. 2K2.1(b)(4) expressly states, in Application Note 19, that the stolen firearm enhancement "applies whether or not the defendant knew or had reason to believe that the firearm was stolen...." Neither the absence of a scienter requirement in the guidelines nor the presence of a scienter requirement in 18 U.S.C. Sec. 922(i)--a statute under which the defendant was not charged--makes the sentencing enhancement unconstitutional. See generally United States v. Goodell, 990 F.2d 497 (9th Cir.1993).
 
 IV
 
 16
 U.S.S.G. Sec. 4A1.1(d) directs that two points be added to the defendant's criminal history score "if the defendant committed the instant offense while under any criminal justice sentence, including probation...." A state court had placed the defendant on probation for two years after he pleaded guilty to a charge of carrying a concealed weapon, and this probationary period ended one day before ATF agents executed the search warrant and seized the cache of guns at the defendant's house. The defendant argues that under these circumstances the phrase "instant offense" should be given a narrow construction limited to the date on which the offense was discovered. The district court disagreed, pointing out that the possession offense had continued for some time before it was discovered. The focus of the guideline was on the time of the offense, the court observed, not the time of the discovery.
 
 
 17
 The district court's analysis was correct, in our view. The Sentencing Commission's Commentary on Sec. 4A1.1(d) says that "[t]wo points are added if the defendant committed any part of the instant offense (i.e., any relevant conduct )" while on probation. (Emphases supplied.) The relevant conduct on which the district court based the defendant's criminal history score clearly began while the defendant was still on probation.
 
 
 18
 AFFIRMED.