**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Lelynn Allen COVERT, Defendant–
Appellant.**

**No. 95–2360.**

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 28, 1997.

Decided April 15, 1997.*

* This decision was originally issued as an "unpub- lished decision" filed on April 15, 1997.

Kathleen Moro Nesi, Asst. U.S. Attorney (argued and briefed), Office of the U.S. Attorney, Detroit, Michigan, for Appellee.

John A. Shea (argued and briefed), Ann Arbor, Michigan, for Appellant.

Before: CONTIE, RYAN, and BOGGS, Circuit Judges.

## OPINION

BOGGS, Circuit Judge.

After pleading guilty to a charge of being a felon in possession of a firearm, defendant Lelynn Allen Covert was sentenced to 96 months in prison. The district court further ordered that Covert's sentence be served consecutively to his undischarged state sentence. On appeal, Covert argues that the district court erred in imposing a consecutive sentence because the court failed to use the appropriate version of the sentencing guidelines and failed to apply the methodology set forth in USSG § 5G1.3(c). He also argues

on appeal that the district court erred in enhancing the base offense level by four levels pursuant to USSG § 2K2.1(b)(5) for possession of a firearm in connection with the underlying offense. Because we find no error in the district court's sentencing of Covert, we affirm.

## I

On December 16, 1994, a grand jury returned an indictment charging Covert with possession of marijuana with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1), being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and using a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). On July 21, 1995, he pled guilty, pursuant to a Rule 11 plea agreement, to the count of being a felon in possession of a firearm. The plea agreement provided that the maximum term of imprisonment would be 96 months. The plea agreement also provided that the parties agreed to the guideline calculations in the worksheets attached to the agreement, with the exception of the application of USSG § 2K2.1(b)(5).[1]

At the sentencing hearing, Covert argued that his sentence should run concurrently to the sentence he was serving in Michigan for the state offense of carrying a concealed weapon.[2] The term of imprisonment for that sentence was 5–10 years. The PSR recommended that the sentence run concurrently to the undischarged state sentence because "the suggested grouping methodology, pursuant to 5G1.3(c), results in a pseudoguide-line range, which is identical to the actual sentencing guideline range." PSR at 10.[3]

On November 29, 1995, Judge Gadola sentenced defendant to 96 months in prison to be served consecutively to his undischarged state sentence. The government argued at the sentencing hearing that the federal sentence should not be concurrent because the defendant was not deterred by the threat of incarceration since "the state sentence [was] based on the defendant's possession of a handgun five months after the federal search warrant was executed at his house where the marijuana and the loaded handgun were found." In response, Covert's counsel argued:

[A decision to impose a consecutive sentence] would create a great disparity between persons who are convicted of multiple federal counts, multiple federal crimes sentenced at one time, and persons convicted of a federal crime after being convicted of a state crime. If Mr. Covert had been—had committed—or had been charged and convicted of the state offense for which he's presently serving time, if he had been—if he had been charged federally in that case, and had also been charged federally obviously in this case, then his— the term of imprisonment ordered by this Court would be in the same guideline range as that computed by the Probation Department in this case and would run concurrent. That's how it would work.

And the policy says, sentence the defendant before you subject to an undischarged state term as if both offense had been federal offenses for which he was sen-

---

1. If the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by 4 levels. If the resulting offense level is less than level 18, increase to level 18.

USSG § 2K2.1(b)(5).

2. On December 18, 1993, officers of the Flint Police Department arrested Covert for carrying a stolen .357 caliber handgun. Covert pled guilty in state court to the offense of "carrying a concealed weapon, habitual offender-third." On March 1, 1994, the state court sentenced Covert to 5–10 years in prison. When he was sentenced in federal court, on November 29, 1995, he was serving this sentence.

3. Based on a total offense level of 21 and a criminal history category of VI, the guideline imprisonment range is 77 to 96 months. As the defendant is serving an undischarged term of imprisonment for another felony offense, he is subject to consideration under U.S.S.G. 5G1.3(c). However, the suggested grouping methodology, pursuant to 5G1.3(c), results in a pseudoguide-line range, which is identical to the actual sentencing guideline range. Hence, to comply with 5G1.3(c), it is recommended that the federal sentence run concurrent with the balance of the undischarged term of imprisonment.

PSR at 10.

tenced at the same time. If the Court follows that policy statement, that means that as of March the 1st, 1994, this Court assumes that Mr. Covert is not only convicted of the state offense, but he's also convicted of the federal offense on that day and is sentenced accordingly.

After hearing counsels' arguments and reviewing Covert's lengthy criminal record, the court imposed a consecutive sentence:

[T]he Court in imposing sentence takes a number of things into consideration. They include the nature and circumstances of your offense, your own personal history and characteristics, the need for the sentence imposed to reflect the seriousness of the offense and to promote respect for the law and to provide just punishment for the offense. The need for the sentence to afford adequate deterrents to criminal conduct and to protect the public from further crimes and to provide you with needed correctional treatment in the most effective manner.

This Court is also to consider the kinds of sentences available and the sentencing range established for the category of offense committed by yourself and as committed by the category of defendant to which you belong, all as set forth in the guidelines, sentencing guidelines. Also the Court considers the pertinent policy statements issued by the sentencing commission and the commentary of the sentencing commission. All the other matters that the Court is directed to consider under the statutes involved here and the Court Rules. And as I say the sentencing guidelines and the policy statements and commentary under those guidelines.

. . . .

It just seems to the Court that under all the circumstances here, the Court's re-

sponsibility really is to protect the public. Because I don't see anything in your record or in your background that indicates that you would be otherwise than a repeat offender. I think you're a career criminal. You've demonstrated that over the years, for half your life. . . .

. . . .

. . . [U]nder your circumstances, I find no reason at all to provide that your sentence be concurrent with your state sentence. To do that really would negate the penalty that's imposed here to a great extent—would negate to a great extent the—this sentence. . . .

Joint Appendix at 155–60. In imposing the sentence, the district court also increased the base offense level by four levels, pursuant to USSG § 2K2.1(b)(5), for possession of a firearm in connection with the felony of possessing marijuana with the intent to distribute.

Covert argues on appeal that the district court erred both in imposing a consecutive sentence and in enhancing the base offense level pursuant to § 2K2.1(b)(5).

## II

Covert makes two arguments against the district court's application of USSG § 5G1.3. First, he argues that application of the November 1, 1995 version of § 5G1.3 to his sentence, instead of the November 1, 1992 version, violates the Ex Post Facto Clause of the Constitution. Second, he argues that the court erred by not actually applying the methodology set forth in the 1992 guideline and its comments. Both arguments lack merit.

We find no merit whatever in Covert's argument that the court's use of the 1995 version of § 5G1.3 violates the Ex Post Facto Clause of the Constitution.[4] The sentencing

---

4. At the time Covert committed the instant offense, the 1992 version of § 5G1.3(c) provided:
(Policy Statement) In any other case, the sentence for the instant offense shall be imposed to run consecutively to the prior undischarged term of imprisonment to the extent necessary to achieve a reasonable incremental punishment for the instant offense.
The 1995 amended version of § 5G1.3, by contrast, reads:

(Policy Statement) In any other case, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.
The amended version also abandoned the methodology contained in the earlier version of § 5G1.3. The guideline commentary now simply

guidelines require the district court to use the sentencing guidelines manual that is in effect on the date that the defendant is sentenced unless the court determines that the use of that manual would violate the Ex Post Facto Clause of the Constitution. When that happens, the court is to use the manual in effect on the date that the offense of the conviction was committed. *See* USSG § 1B1.11(a) and (b).

■ Initially, we note no ex post facto violation would have occurred even were the 1995 version to have been used. This court has recently determined that application of the 1995 version of § 5G1.3(c) does not violate the Ex Post Facto Clause because it does not "increase the punishment to which [the defendant] is subject or criminalize activity that was legal at an earlier date." *United States v. Jackson*, No. 95–6530, 1997 WL 7516, *3 (6th Cir. Jan.8, 1997) (unpublished). Rather, it "merely refines the process of determining the 'reasonable punishment' to be imposed upon a defendant subject to an undischarged term of imprisonment." *Ibid.*

■ Moreover, nothing in the record supports Covert's contention that the district court used the 1995 version of the guidelines. Rather, it appears that the court used the 1994 version of the guidelines, wherein § 5G1.3(c) was identical to the 1992 version. Covert argues that the 1995 version of the guidelines was used, based simply on the fact that he was sentenced on November 29, 1995.[5] However, this reasoning does not comport with the record. First, the PSR

provides that a district court should "consider" the factors set forth in 18 U.S.C. § 3553(a) and "be cognizant of" the following factors when trying "to achieve a reasonable punishment": (1) the type and length of the prior undischarged sentence; (2) the time served on the undischarged sentence and the time likely to be served before release; (3) "the fact that the prior undischarged sentence may have been imposed in state court rather than federal court, or at a different time before the same or different federal court"; and (4) "any other circumstances relevant to the determination of an appropriate sentence for the instant offense." USSG § 5G1.3 comment. (n.3) (Nov. 1995).

5. The 1995 version of the guidelines took effect on November 1, 1995.

used the November 1994 version of the guidelines because Covert had originally been scheduled to be sentenced on October 24, 1995. Second, there is no indication in the record that the district court departed from the version used in the PSR. Rather, the arguments by counsel at the sentencing hearing suggest that the court in fact used the 1994 version: counsels' arguments centered on the methodology in the pre-amendment version of § 5G1.3, a methodology that, as discussed above, was abandoned in the 1995 version. Had the court been sentencing Covert under the 1995 version of the guidelines, it would not have entertained arguments based only on the earlier version.

■ Finally, Covert never objected to, or questioned in any manner, the version of the guidelines that the court applied. Thus, any error could only be reviewed for plain error. *See United States v. Sherrod*, 33 F.3d 723, 724 (6th Cir.1994), *cert. denied*, 514 U.S. 1005, 115 S.Ct. 1317, 131 L.Ed.2d 198 (1995). It is clear from the record that the court's use of either the 1994 or 1995 version did not constitute plain error.

■ Covert's next assignment of error is also without merit. Basically, he argues that the policy statement embodied in § 5G1.3(c) and the accompanying commentary deprived the district court of any discretion to impose a consecutive sentence if the methodology outlined in application note three to § 5G1.3 leads to a determination that the sentence should run concurrently. Covert misunderstands the application of § 5G1.3(c) and its commentary.[6]

6. The relevant commentary provides:

Where ... subsection (c) applies.. the court shall impose a consecutive sentence to the extent necessary to fashion a sentence resulting in a reasonable incremental punishment for the multiple offenses. In some circumstances, such incremental punishment can be achieved by the imposition of a sentence that is concurrent with the remainder of the unexpired term of imprisonment. In such cases, a consecutive sentence is not required. To the extent practicable, the court should consider a reasonable incremental penalty to be a sentence for the instant offense that results in a combined sentence of imprisonment that approximates the total punishment that would have been imposed under § 5G1.2 (Sentencing on Multiple

■ A district court has the discretion to impose consecutive or concurrent sentences pursuant to § 5G1.3, upon consideration of the factors listed in 18 U.S.C. § 3553(a) [7] and the applicable guidelines and policy statements in effect at the time of sentencing. *United States v. Coleman,* 15 F.3d 610, 611–12 (6th Cir.1994). Thus, our review is only for abuse of discretion. *Id.* at 611.

■ While the guidelines give a district court considerable discretion in determining whether to impose a concurrent or consecutive sentence, it is not unfettered discretion—the record on appeal should show that the district court turned its attention to § 5G1.3(c) and the relevant commentary in its determination of whether to impose a concurrent or consecutive sentence. *Id.* at 613. This is not to say, however, that the district court is *required* either to (1) use the commentary methodology or else (2) invoke a departure from the Guidelines. *See ibid. See also United States v. Redman,* 35 F.3d

437 (9th Cir.1994), *cert. denied,* 513 U.S. 1120, 115 S.Ct. 922, 130 L.Ed.2d 802 (1995); *United States v. Matsen,* No. 94–1133, 1995 WL 399075 (6th Cir. July 6, 1995) (unpublished).

Moreover, it is clear from the language of § 5G1.3's commentary that, while the court "should consider a reasonable incremental penalty to be a sentence ... that would have been imposed under § 5G1.2 (Sentencing on Multiple Counts of Conviction)," the Sentencing Commission intended the methodology simply "to assist the court" in determining whether to impose a concurrent or consecutive sentence. *See* USSG § 5G1.3 comment. (n.3) (Nov. 1994); *see also Redman,* 35 F.3d at 441 ("The court may decline to impose the sentence suggested by the commentary's methodology, if it has a good reason for doing so. Indeed, as we have already pointed out the Commission has said that the methodology 'is meant to assist the court.' That is a far cry from a demand that courts

Counts of Conviction) had all of the offenses been federal offenses for which sentences were being imposed at the same time. It is recognized that this determination frequently will require an approximation. Where the defendant is serving a term of imprisonment for a state offense, the information available may permit only a rough estimate of the total punishment that would have been imposed under the guidelines. Where the offense resulting in the undischarged term of imprisonment is a federal offense for which a guideline determination has previously been made, the task will be somewhat more straightforward, although even in such cases a precise determination may not be possible.

It is not intended that the above methodology be applied in a manner that unduly complicates or prolongs the sentencing process. Additionally, this methodology does not, itself, require the court to depart from the guideline range established for the instant federal offense. Rather, this methodology is meant to assist the court in determining the appropriate sentence (*e.g.*, the appropriate point within the applicable guideline range, whether to order the sentence to run concurrently or consecutively to the undischarged term of imprisonment, or whether a departure is warranted). Generally, the court may achieve an appropriate sentence through its determination of an appropriate point within the applicable guideline range for the instant federal offense, combined with its determination of whether that

sentence will run concurrently or consecutively to the undischarged term of imprisonment. USSG § 5G1.3 comment. (n.3) (Nov. 1994).

7. The background to § 5G1.3(c) makes specific reference to 18 U.S.C. § 3584, which requires that the district court consider the factors outlined in 18 U.S.C. § 3553(a), when considering whether to impose a concurrent or consecutive sentence on a defendant who is already subject to an undischarged term of imprisonment. Those factors are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to (a) reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (b) afford adequate deterrence to criminal conduct; (c) protect the public from further crimes of the defendant; and (d) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines that are issued by the Sentencing Commission; (5) any pertinent policy statement issued by the Sentencing Commission that is in effect on the date the defendant is sentenced; and (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a).

knuckle under and follow the Commission's approach.").

In this instance we do not believe the district court abused its discretion even though it did not, on the record, perform the specific calculations suggested by the guidelines. The totality of the record makes clear that the district court properly turned its attention to § 5G1.3(c) and the relevant commentary before imposing a consecutive sentence. First, from having read the PSR, the district court knew that following the methodology set forth in the commentary would result in a concurrent sentence. Second, the court specifically stated before imposing the consecutive sentence that it considered "the pertinent policy statements . . . and the commentary of the sentencing commission." Third, the government declared at the hearing that application of the commentary would result in a concurrent sentence, but argued that the district court should impose a consecutive sentence because a concurrent sentence would not be sufficient punishment, given Covert's inability to be deterred. Fourth, the transcript reveals that counsel for Covert went through the entire guideline methodology just prior to the court making its determination. Thus, we are convinced that the court properly turned its attention to § 5G1.3 and its commentary before imposing its sentence, and simply rejected that methodology, as it had the discretion to do.

The court did not abuse its discretion in imposing a consecutive sentence in this instance, especially in light of Covert's criminal record and the fact that the sentence imposed was within the range of the Rule 11 plea agreement. Moreover, the court was aware, as conceded by Covert,[8] that imposition of a concurrent sentence could result in no incremental penalty at all, as his state sentence was an indeterminate five to ten years.

### III

■ Covert also contends that the district court erred in enhancing his offense level by four levels for possession of a firearm, which the court determined was connected to the charge of possession of marijuana with the intent to distribute. In rejecting Covert's challenge to the four-level enhancement, the district court found:

> On that same date, July 22nd, 1993, the defendant's residence at 1747 Bennett here in Flint was searched and here was found this loaded handgun in a container of marijuana. The container had the defendant's fingerprints on it, there were a total of ten separate bags containing marijuana found, a total of 127.8 grams, or just over a quarter of a pound.

> Also located during the search were aluminum scales such as are typically used in narcotics sales and transactions. The very same day Mr. Covert was arrested, he had some $843 in cash on his person and these suspected narcotics ledgers.

> It just seems to me that there is sufficient proof, certainly by at least a preponderance of the evidence, that the possession of this firearm is linked to marijuana sale and that the—that these facts do place the defendant in a position of—in possession of the gun with the purpose to protect the marijuana or proceeds from marijuana sales. The four point enhancement of his offense level due to possession of the firearm in connection with another felony, that felony being possession with intent to distribute marijuana, is entirely justified.

Joint Appendix at 146.

Covert does not dispute that he possessed a firearm or that the district court was permitted under the plea agreement to consider the relevant conduct that was involved in the dismissed drug offense count of the indictment. Rather, he argues that the "mere fact that a firearm was possessed by a person who has committed another felony is insufficient to satisfy the requirements" of § 2K2.1(b)(5). Appellant's Brief at 28. He argues that the Supreme Court's decision in *Bailey v. United States*, —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), calls into

---

8. *See* Appellant's Brief at 21 ("It is conceivable, although not likely, that because Appellant's state sentence could theoretically extend to ten years, he would receive no additional penalty for his federal offense.").

question the use of the "fortress theory"[9] when applying § 2K2.1(b)(5). Covert's argument is without merit.

Under § 2K2.1(b)(5) of the guidelines, the defendant's base offense level must be increased by four levels "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense." In reviewing the sentence, "[t]he court of appeals shall ... accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e). *See United States v. Hill,* 79 F.3d 1477, 1481 (6th Cir.), *cert. denied,* — U.S. —, 117 S.Ct. 158, 136 L.Ed.2d 102 (1996). This court, however, applies a *de novo* standard of review to the question of whether the facts, as determined by the district court, warrant the application of a particular guideline. *Ibid.*

Covert argues that because we have analogized the application of § 2K2.1(b)(5) to the application of 18 U.S.C. § 924(c) in *United States v. Woods,* No. 94–1992, 1995 WL 428334 (6th Cir.) (unpublished), *cert. denied,* — U.S. —, 116 S.Ct. 537, 133 L.Ed.2d 442 (1995),[10] the enhancement cannot be upheld given the Court's decision in *Bailey.* We are unpersuaded by Covert's argument.

First, the Supreme Court in *Bailey* only addressed the meaning of the term "use" in 18 U.S.C. § 924(c), not the term "possessed" contained in USSG § 2K2.1(b)(5).[11] The Court found that " § 924(c)(1) requires evidence sufficient to show an *active employment* of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense." *Bailey,* — U.S. at —, 116 S.Ct. at 505. The court concluded that " 'use' must connote more than mere possession of a firearm by a person who commits a drug offense." *Id.* at —, 116 S.Ct. at 506. Thus, *Bailey* is not contrary to our decision today. Covert fails to recognize in his argument that there are significant differences between the texts of 18 U.S.C. § 924(c) and USSG § 2K2.1(b)(5).

Section 2K2.1(b)(5) not only allows for enhancement of the base offense level when the defendant "used ... any firearm or ammunition in connection with another felony offense," but also allows for enhancement when the defendant "possessed" such a firearm. While *Bailey* holds that "use" for purposes of § 924(c) requires more than mere possession, it does not require that the standard applied to § 2K2.1(b)(5) be changed. This was noted by the Supreme Court in *Bailey* itself, when it stated that the term "possess" used in sentencing guideline sections, such as 2K2.1(b)(5),[12] sweeps more broadly than the word "use." *See id.* at —, 116 S.Ct. at 508

**9.** The courts, in dealing with cases involving firearms found on premises under the control of a defendant charged with a drug offense, developed the "fortress analogy" or emboldenment theory. That theory holds that "if it reasonably appears that the firearms found on the premises controlled or owned by a defendant and in his actual or constructive possession are to be used to protect the drugs or otherwise facilitate a drug transaction, then such firearms are used 'during and in relation to' a drug trafficking crime." *United States v. Henry,* 878 F.2d 937, 944 (6th Cir.1989) (citation omitted).

**10.** In *Woods* we held that the nexus between the weapons and the drugs in a conviction existed under the fortress theory adopted in *Henry* where the defendant was keeping marijuana cigarettes for sale in his bedroom where he also had weapons and ammunition.

**11.** In *Bailey,* the Supreme Court addressed the issue of whether "evidence of the proximity and accessibility of a firearm to drugs or drug pro-

ceeds is alone sufficient to support a conviction for 'use' of a firearm during and in relation to a drug trafficking offense under 18 U.S.C. § 924(c)(1)." — U.S. at —, 116 S.Ct. at 503. The defendants in *Bailey* were convicted of federal drug offenses and of violating 18 U.S.C. § 924(c)(1), which imposes a prison term for any person who "during and in relation to any ... drug trafficking crime ... uses or carries a firearm." The conviction of one of the defendants was based on a loaded pistol that the police found inside a bag in his locked car trunk after he had been arrested for possession of cocaine. The other defendant's conviction was based on the police having found an unloaded, holstered firearm locked in a trunk in that defendant's bedroom closet after she was arrested for a number of drug-related offenses.

**12.** The Court, in discussing the term "possess" in the sentencing guidelines, discussed it in the context of USSG § 2D1.1(b)(1), which is the relevant sentencing guideline for § 924(c) convictions.

("If Congress had intended to deprive 'use' of its active connotations, it could have simply substituted a more appropriate term—'possession'—to cover the conduct it wished to reach.... Storage of a firearm, without its more active employment, is not reasonably distinguishable from possession.").

Our holding today is also in accord with other circuits that have addressed the issue and have found that *Bailey* does not affect the fortress or emboldenment theory for purposes of the sentencing guidelines. The First and Fifth Circuits, for example, have rebuffed the argument advanced by Covert. In *United States v. Gary*, the First Circuit rejected an appellant's argument challenging use of the fortress theory as applied to USSG § 4B1.4(b)(3)(A): [13] "*Bailey* does not apply to U.S.S.G. § 4B1.4(b)(3)(A), which reaches offenses in which the defendant either 'used or possessed' a firearm." *United States v. Gary*, 74 F.3d 304, 317 n. 11 (1st Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 2567, 135 L.Ed.2d 1084 (1996). And the Fifth Circuit, in *United States v. Castillo*, reached a similar conclusion in an appeal challenging a sentence enhancement pursuant to USSG § 2D1.1(b)(1):

> [S]ection 2D1.1(b)(1) contemplates enhancement "[i]f a dangerous weapon (including a firearm) was possessed." Moreover, the Supreme Court took great pains in *Bailey* to limit its holding to the construction of the term "use" as that term is employed in 18 U.S.C. § 924(c)(1), the statute at issue in *Bailey*. Therefore, *Bailey* does not control the present analysis.

*United States v. Castillo*, 77 F.3d 1480, 1499 n. 34 (5th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 180, 136 L.Ed.2d 120 (1996).

■ Moreover, we are convinced that the Supreme Court did not intend to overrule years of case law defining the term "possession" when it decided the meaning of "use" in *Bailey*. This circuit has repeatedly held that "[p]ossession may be either actual or constructive and it need not be exclusive but may be joint." *United States v. Beverly*, 750 F.2d 34, 37 (6th Cir.1984) (defendant's conviction of possession of a weapon by a convicted felon reversed). "Actual possession exists when a tangible object is in the immediate possession or control of the party. Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *Ibid. See also United States v. Hill*, 79 F.3d 1477, 1485–86 (6th Cir.) (enhancement for possession of a firearm appropriate where officers found drugs in the bathroom and a semi-automatic pistol in the top drawer of a dresser in the master bedroom along with three magazines and approximately fifteen live rounds), *cert. denied*, —— U.S. ——, 117 S.Ct. 158, 136 L.Ed.2d 102 (1996); *Henry*, 878 F.2d at 943 (court stated in a § 924(c) conviction that " 'possession' [of a firearm] can be constructive as well as actual, and thus may be wholly passive conduct") (cited approvingly in *Woods*, which involved a sentence enhancement pursuant to § 2K2.1(b)(5)); *United States v. Thomas*, 497 F.2d 1149, 1150 (6th Cir.1974) ("Possession can be constructive as well as actual. '[A] person who, although not in actual possession, knowingly has the power and the intention at a given time to exercise dominion and control over a thing ... is then in constructive possession of it.' Certainly ... appellant knew the weapon's location, and until it was removed or at least until the apartment door was locked, had the power to exercise dominion over it." (quotation omitted)); *United States v. Duso*, Nos. 92–1162, 92–1274, and 92–1289, 1993 WL 131940 (6th Cir. Apr.27, 1993) (unpublished) (defendant's conviction for possession of a firearm based on his possession of a firearm found under his bed mattress upheld).

Covert also appears to argue that *Bailey* encompasses within its definition of "use" the meaning of "in relation to," which he asserts is identical to the "in connection with" phrase in § 2K2.1(b)(5):

> The Court's statement cannot refer to evidence concerning use of a firearm in gen-

---

**13.** That section provides for a base offense level of 34, "if the defendant *used or possessed* the firearm or ammunition in connection with a crime of violence or controlled substance offense, as defined in § 4B1.2(1)...." USSG § 4B1.4(b)(3)(A) (emphasis added).

eral, but to use *in relation to* the drug offense. *Bailey* thus necessarily held that the "fortress theory" is insufficient, as a matter of law, to establish that a firearm was used 'in relation to' the drug offense. The Court effectively held that ownership or control of a firearm, even if it serves to "embolden" the offender by being available to protect his drugs, money, or person does not satisfy the nexus requirement of § 924(c)(1).

Appellant's Brief at 31–32 (emphasis in original). Even were we to accept Covert's assertion that "in relation to" has the same meaning as "in connection with," his argument must fail. The Supreme Court has held in *Smith v. United States* that, in the context of a § 924(c) offense, the term "use" is distinct from the concept of "in relation to." *See* 508 U.S. 223, 237–38, 113 S.Ct. 2050, 2058–59, 124 L.Ed.2d 138 (1993). Thus, the Court's holding in *Bailey* did not affect the Court's previous definition of "in relation to," which the Court noted is expansive: "The phrase 'in relation to' thus, at a minimum, clarifies that the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence." *Id.* at 238, 113 S.Ct. at 2058–59. There is nothing in this definition that calls into doubt the use of the fortress theory in the context of § 2K2.1(b)(5) enhancements, because the fortress theory requires that the firearm controlled or owned by the defendant be "in his actual or constructive possession" and "be used to protect the drugs or otherwise facilitate a drug transaction." *Henry,* 878 F.2d at 944.

## IV

For the foregoing reasons, Covert's sentence of 96 months to be served consecutively to his undischarged state sentence is AFFIRMED.