UNITED STATES of America, Plaintiff–Appellee,

v.

Eddie UNDERWOOD, Defendant–Appellant.

No. 99–6399.

United States Court of Appeals, Sixth Circuit.

June 8, 2001.

Before MARTIN, Chief Judge; MOORE, Circuit Judge; O'MALLEY, District Judge.[*]

PER CURIAM.

Eddie Underwood appeals his jury conviction and sentence for conspiracy to dis-

[*] The Honorable Kathleen M. O'Malley, United States District Judge for the Northern District of Ohio, sitting by designation.

tribute marijuana in violation of 21 U.S.C. § 846. For the following reasons, we affirm the district court.

## I.

Eddie Underwood was indicted for conspiracy to distribute marijuana in violation of 21 U.S.C. § 846. At the time of his arrest on May 8, 1998, Underwood was in the custody of the Tennessee Bureau of Prisons, serving a two year and one month state prison sentence for aggravated assault and possession of schedule VI drugs for resale and a one year prison term for reckless endangerment.

At Underwood's jury trial for drug conspiracy, numerous individuals who had been charged in the indictment as co-conspirators testified against Underwood. One witness, Robert Guerrero, had been at the center of the distribution scheme, maintaining extensive dealings with individuals in Florida and Chicago, from whom he both bought and sold large quantities of marijuana. Guerrero testified that he moved to Shelbyville, Tennessee, from Florida in 1987, but maintained his connection to Martin Gloria, from whom he had acquired marijuana in Florida. In 1989 or 1990, Guerrero began acquiring marijuana from Gloria in Florida and selling it in Shelbyville. Guerrero would drive or send a courier to Florida, pick up between ten and fifty pounds of marijuana at a time, and resell it in Shelbyville. Guerrero had a similar buying arrangement with Tomas Unzueta in Chicago.

Guerrero testified that he met Underwood in the fall of 1995 through James "Red" Harris, and that he and Underwood dealt in marijuana until the spring of 1996. On one trip to Florida with Underwood, Guerrero's wife Sherry, and Red Harris, Guerrero purchased five to six pounds of marijuana from Gloria and sold three to five pounds of that amount to Underwood. Guerrero, Rodriguez, and Underwood made subsequent trips to Florida, and Underwood came two or three times to Guerrero's home to buy marijuana, each time purchasing three to five pounds. At Guerrero's request, Underwood also brought twenty pounds of marijuana to Chicago, where he and Guerrero sold it. At the time of Underwood's trial, Guerrero had pleaded guilty to conspiracy to distribute marijuana and operating a continuing criminal enterprise and was awaiting sentencing. Guerrero admitted on cross examination that the United States had filed a § 5K.1 motion for downward departure and that he had a prior criminal history.

Additionally, Herman Caldwell, one of Guerrero's couriers, testified that on one occasion Underwood delivered to Guerrero two pounds of marijuana, as well as drug paraphernalia. Caldwell testified to numerous other drug transactions: Underwood brought a sack containing five to ten pounds of marijuana to Guerrero's detail shop; Guererro gave marijuana to Underwood to satisfy a debt; Guerrero gave two pounds of marijuana to Underwood on two other occasions. Danny Pickering, another courier, testified about conversations between Guerrero and Underwood regarding marijuana, and that he gave Underwood two pounds of marijuana. Caldwell also had received a § 5K1.1 reduction to his sentence, and Pickering testified that he hoped to receive one. Sherry Rodriguez, Guerrero's wife, testified that she made the trip to Florida with James Harris, her husband and Underwood, where her husband purchased ten pounds of marijuana and gave it to Underwood, and that Underwood had brought marijuana to Guerrero in Chicago. Sandra Branham, who had lived with Underwood for two months in 1996, testified that she sold marijuana for Underwood and took a trip to Florida with Guerrero and Underwood.

Underwood was found guilty of conspiracy to distribute marijuana in violation of 21 U.S.C. § 846, and sentenced to five years imprisonment, consecutive to any previous federal or state sentence, followed by three years of supervised release. Underwood appeals his conviction and sentence.

## II.

■ Underwood argues on appeal that there was insufficient evidence to support his conviction for conspiracy to distribute marijuana. On a sufficiency of the evidence claim, we look "only to whether after reviewing the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." *United States v. Ferguson,* 23 F.3d 135, 140 (6th Cir.1994) (internal quotations omitted).

■ To show a conspiracy under 21 U.S.C. § 846, "the government must prove the existence of an agreement to violate drug laws and that each conspirator knew of, intended to join and participated in the conspiracy." *United States v. Peters,* 15 F.3d 540, 544 (6th Cir.1994). A formal or express agreement is unnecessary to establish a conspiracy under section 846; a mere "tacit or mutual understanding among the parties" is sufficient. *United States v. Phibbs,* 999 F.2d 1053, 1063 (6th Cir.1993).

■ In this case, five co-conspirators testified at Underwood's trial that he was involved in the conspiracy. They testified that Underwood traveled to Florida with Guerrero to purchase marijuana, that Underwood brought marijuana to Chicago at Guerrero's request for resale, and that there were numerous meetings between Guerrero and Underwood to discuss, purchase, or sell marijuana. Additionally, the police seized marijuana and drug paraphernalia from Underwood's home.

Viewed in the light most favorable to the United States, a rational jury could have found on these facts that there was an agreement to violate the drug laws and that Underwood knew of, intended to join, and participated in that conspiracy.

■ Underwood argues that the proof against him consisted merely of the testimony of co-defendants, all of whom had prior drug problems and all of whom testified pursuant to plea agreements in which they received or were promised downward departures in return for their testimony. However, "challenges to the credibility of a witness are not ... challenges to the sufficiency of the evidence, but instead are challenges to the quality of the government's evidence." *United States v. Latouf,* 132 F.3d 320, 330 (6th Cir.1997); *see also United States v. Hilliard,* 11 F.3d 618, 620 (6th Cir.1993) ("In addressing sufficiency of the evidence questions, this Court has long recognized that we do not weigh the evidence, consider the credibility of the witnesses or substitute our judgment for that of the jury."). For purposes of a sufficiency of the evidence claim, it is irrelevant that the evidence against Underwood was supplied by individuals cooperating with the government as a result of a plea bargain. *See United States v. Welch,* 97 F.3d 142, 149 (6th Cir.1996). Accordingly, we find that there was sufficient evidence to sustain Underwood's conviction.

## III.

■ Underwood next argues that the district court erred in determining the amount of marijuana for which he was responsible. "A district court's determination of the quantity of drugs used to compute a defendant's sentence is a finding of fact that should not be rejected unless clearly erroneous." *United States v. Pruitt,* 156 F.3d 638, 647 (6th Cir.1998)

(quoting *United States v. Thomas,* 49 F.3d 253, 259 (6th Cir.1995)).

A court's approximation of the amount of drugs is not clearly erroneous if supported by "competent evidence in the record." *Id.* The evidence "must have a minimal level of reliability beyond mere allegation and the court should err on the side of caution in making its estimate." *United States v. Owusu,* 199 F.3d 329, 338 (6th Cir.2000) (citations and internal quotations omitted). The United States has the burden of proving by a preponderance of the evidence the amount of drugs for which the defendant. is responsible. *See United States v. Mahaffey,* 53 F.3d 128, 131 (6th Cir.1995).

In determining the guideline range under Sentencing Guideline § 1B1.3(a)(1)(A), a defendant is responsible for all of his or her "acts and omissions." Application note 2 states that "with respect to offenses involving contraband (including controlled substances), the defendant is accountable for all quantities of contraband with which he was directly involved. . . ." Additionally, under Sentencing Guideline § 1B1.3(a)(1)(B), a defendant convicted of conspiracy may be responsible for "all reasonably foreseeable acts and omissions of others in furtherance" of the conspiracy. *See United States v. Neuhausser,* 241 F.3d 460, 475 (6th Cir.2001) ("Regarding the drug quantities, we have observed, and the Sentencing Guidelines confirm, that a defendant convicted of conspiracy may be charged with all reasonably forceable acts and omissions of co-conspirators in furtherance of the conspiracy.").

The district court found Underwood responsible for fifty-three pounds and 434.2 grams of marijuana. The 434.2 grams was found in Underwood's home when he was arrested on October 30, 1996. In so doing, the court held Underwood responsible only for those quantities of drugs directly attributable to Underwood, such as the marijuana Guerrero gave directly to Underwood or Underwood gave directly to Guerrero. The district court considered the arguments made at the sentencing hearing and the evidence from trial in finding the presentence report accurate as to the drug quantity. In arriving at the drug quantity, the presentence report considered the trips to Florida for various quantities of marijuana, the trip to Chicago for twenty pounds, and the numerous incidents testified to at trial in which Guerrero and Underwood dealt in marijuana. In every instance where Guerrero testified at trial to a transaction involving a range of marijuana, the presentence report considered the lowest amount in the range in computing the quantity of drugs. This evidence regarding the quantities of drugs constitutes "competent evidence in the record" and has the requisite "minimal level of reliability beyond mere allegation." *Pruitt,* 156 F.3d at 647. Finally, we have previously held that testimonial evidence of co-conspirators is "sufficient to support a finding as to the quantity of drugs attributable to the defendant." *Id.* We can therefore find no clear error in the district court's determination regarding the quantity of drugs for which Underwood was responsible.

## IV.

Underwood next argues that the district court erred in adding two points to his criminal history. On July 7, 1997, Underwood was convicted in state court of aggravated assault and possession of narcotics for resale and sentenced to two years and one month imprisonment. That same day, Underwood received a one-year imprisonment sentence on a reckless endangerment conviction. The district court added two criminal history points pursuant to Sentencing Guideline § 4A1.1(b) for this sentence. We review the factual findings of the district court in

determining a defendant's criminal history category for clear error. *See United States v. Wilson*, 168 F.3d 916, 922 (6th Cir.1999).

In determining a defendant's criminal history category under § 4A1.1(b), two criminal history points should be added "for each prior sentence of imprisonment of at least sixty days not counted in (a)." [1] Section 4A1.2(a)(1) defines a prior sentence as "any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere, for conduct not part of the instant offense." Application note 1 explains that a " 'prior sentence' means a sentence imposed prior to sentencing on the instant offense, other than a sentence for conduct that is part of the instant offense."

Underwood argues that the reckless endangerment conviction is not a "prior sentence" for purposes of § 4A1.2 because the offense conduct was part of the current conspiracy to distribute offense, and that the district court therefore erroneously added two criminal history points. Under our decision in *United States v. Beddow*, 957 F.2d 1330 (6th Cir.1992), however, this sentence does constitute a prior sentence. In *Beddow*, we examined the meaning of the phrase "conduct not part of the instant offense." *Beddow* concluded that

> the appropriate inquiry is whether the "prior sentence" and the present offense involve conduct that is severable into two distinct offenses. This is necessarily a fact-specific inquiry that involves more than just a consideration of the elements of the two offenses. Factors such as the temporal and geographical proximity of the two offenses, common victims, and a common criminal plan or intent also must be considered.

*Id.* at 1338 (internal citations omitted). *Beddow* held that a state concealed weapon charge did not involve conduct that was part of the federal money laundering offense, and thus counted the concealed weapons conviction as a prior sentence. *See id.* at 1339. Even though the defendant carried the concealed weapon to protect emeralds that he purchased as part of the money laundering scheme, different societal interests were harmed. *See id.*; *see also United States v. Escobar*, 992 F.2d 87 (6th Cir.1993).

In this case, reckless endangerment is not an element of the federal conspiracy charge. Moreover, the societal interests implicated in the reckless endangerment charge, protecting officer and highway safety, are distinct from the societal interests implicated by the conspiracy charge—stopping distribution of marijuana. Accordingly, there is no clear error in the district court's determination that Underwood's state reckless endangerment conviction was "conduct not part of" the instant conspiracy to distribute marijuana offense.

**V.**

▮ Finally, Underwood asserts that the district court erred in ordering his sentence to run consecutive to his state sentence. While there are certain circumstances in which a district court must run a subsequent federal sentence concurrently with an undischarged term of imprisonment, *see* Sentencing Guidelines § 5G1.3(b), those circumstances do not exist here. Instead, pursuant to Sentencing Guideline § 5G1.3(c), a district court generally has discretion to impose a consecutive, partially consecutive, or concurrent term of imprisonment on a defendant already subject to an undischarged term of imprisonment. *See* 18 U.S.C. § 3584(a);

---

1. Section 4A1.1(a) directs a district court to "add three points for each prior sentence of imprisonment exceeding one year and one month."

*United States v. Covert,* 117 F.3d 940, 945 (6th Cir.1997). In exercising this discretion, the district court must consider the factors set forth in 18 U.S.C. § 3553(a) and applicable sentencing guidelines and policy statements. *See Covert,* 117 F.3d at 945. The district court is not required to make specific findings related to each factor; it merely must "articulate at least enough of its reasoning to permit an informed appellate review." *United States v. McClellan,* 164 F.3d 308, 310 (6th Cir.1999). We review a district court's decision to impose a concurrent or consecutive sentence under § 5G1.3(c) for abuse of discretion. *See Covert,* 117 F.3d at 945.

The factors in § 3553(a) include: the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment of the offense; the deterrent effect on criminal conduct; and the protection of the public. *See* 18 U.S.C. § 3553(a)(1)-(2). In deciding whether to impose concurrent or consecutive sentences, application note 3 to § 5G1.3 states that "[t]o achieve a reasonable punishment and avoid unwarranted disparity, the court should consider the factors set forth in 18 U.S.C. § 3584 (referencing 18 U.S.C. § 3553(a)) and be cognizant of" several other factors. These include the type and length of the prior undischarged sentence, time already served on the prior sentence, whether the prior sentence was imposed in state court, and any other relevant circumstances. *See* Sentencing Guideline § 5G1.3, application note 3.

The district court sentenced Underwood to five years imprisonment, to run consecutively to any previous state sentence. The court stated that it "imposes this sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." This sentence alone reflects that the district court paid due consideration to the statutory factors, as § 3553(a)(2)(A) directs the district court to consider "the need for the sentence imposed ... to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."

At the time of his sentencing in federal court, Underwood was still subject to an undischarged term of imprisonment for reckless endangerment conviction on July 7, 1997, to run consecutive to his two-year and one month sentence. Because that state conviction was unrelated to the federal charges for which sentence was to be imposed, § 5G1.3(c) governed the district court's sentencing determination on this issue. We therefore find that the district court properly applied that sentencing guideline and did not abuse its discretion in ordering that Underwood's sentence run consecutive to his undischarged state sentence for reckless endangerment.

## VI.

For the foregoing reasons, we AFFIRM Underwood's conviction and sentence.